# MILDRED F. AHERN *v.* JOYCE THOMAS, COMMISSIONER OF SOCIAL SERVICES (SC 15845)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued October 27, 1998—officially released May 18, 1999

*Patrick B. Kwanashie*, assistant attorney general, with whom were *Maite Barainca*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellant (defendant).

*George B. Bickford*, with whom, on the brief, was *Neil W. Kraner*, for the appellee (plaintiff).

*Opinion*

CALLAHAN, C. J. Title XIX of the Social Security Act; 42 U.S.C. § 1396 et seq.; provides that a determination of eligibility for medicaid benefits may be based on "only such income and resources as are . . . available

to the applicant . . . ."[1] In 1990, the plaintiff, Mildred F. Ahern, established and funded a trust. The sole issue in this administrative appeal is whether the principal of that trust is a resource "available" to the plaintiff for purposes of determining her eligibility to receive benefits under the medicaid program. We conclude that it is not available to her.

The following facts and procedural history are undisputed. The plaintiff, a ninety-two year old woman, has resided at St. Mary Home (home), a nursing facility located in West Hartford, since January, 1990. On October 6, 1990, she established and funded a trust. The trust instrument directs, inter alia, that the trustees[2] "shall pay or apply the net income of the trust estate to or for the benefit of the [plaintiff] during [her] lifetime."

From the time of her admission to the home until November, 1994, to pay for her care, the plaintiff utilized her income as well as assets that had not been transferred to the trust. Those assets, however, were depleted by November, 1994. Thereafter, the income the plaintiff has received from the trust has been applied toward the cost of her care at the home. The plaintiff's other income, which includes social security and pension benefits, also has been used to pay for that care. The cost of her care, however, exceeds the plaintiff's total income. On November 16, 1994, the plaintiff applied to the department of social services (department) for medicaid benefits[3] seeking financial assis-

---

[1] 42 U.S.C. § 1396a (a) (17) (B).

[2] The trust instrument names as trustees the plaintiff's daughter, Carol Ahern, and Connecticut National Bank, now Fleet Bank.

[3] The plaintiff's application for medicaid benefits was filed more than forty-eight months after she established the trust. For trusts established prior to August 11, 1993, the "look back period" for eligibility for medicaid benefits is thirty months. See 42 U.S.C. § 1396p (c) (1988). Consequently, the plaintiff's transfer of assets to the trust in 1990 did not interfere with her eligibility for medicaid benefits. For trusts established on or after August 11, 1993, the look back period is sixty months. See 42 U.S.C. § 1396p (c) (1994).

tance for the cost of her care in excess of her total income.[4]

In July, 1995, the department determined that under the terms of the trust instrument, not only the net trust income but also the trust principal, which at that time was $637,937, were "available" to the plaintiff for purposes of determining her medicaid eligibility. Consequently, the department concluded that the plaintiff's "available" resources exceeded the $1600 resource limit for medicaid eligibility set forth in Connecticut's state medicaid plan; see General Statutes §§ 17b-264 and 17b-80 (c);[5] see also Department of Social Services, Uniform Policy Manual (1993) § 4005.10 (Uniform Policy Manual); and, on that basis, denied her application.

The plaintiff then exercised her right to an administrative appeal before a fair hearing officer. See General Statutes § 17b-66.[6] The hearing officer also concluded that the plaintiff's "available" resources exceeded the $1600 eligibility limit and denied her medicaid application. Thereafter, the plaintiff appealed from the hearing officer's decision to the Superior Court pursuant to General Statutes §§ 17b-65 and 4-183.[7] On appeal to that

[4] When an individual who receives medicaid benefits is a resident of a nursing facility, federal law requires that the state reduce the payments made under the medicaid program to the nursing facility by the amount of the individual's income that remains after certain deductions, such as a personal needs allowance, have been made. See 42 C.F.R. §§ 435.725, 435.733, 435.832 and 436.832. Thus, nursing home residents are required to apply their income, minus certain allowances, to the cost of the nursing home care.

[5] General Statutes § 17b-264 provides in relevant part: "All of the provisions of sections . . . 17b-79 to 17b-103 . . . are extended to the medical assistance program . . . ."

General Statutes § 17b-80 (c) provides in relevant part: "No person shall be eligible . . . whose assets as defined by the commissioner exceed sixteen hundred dollars . . . ."

[6] General Statutes § 17b-66 provides: "Any applicant or beneficiary aggrieved by a decision of the commissioner made without a fair hearing may request a hearing in accordance with the provisions of section 17b-60."

[7] General Statutes § 17b-65 (a) provides in relevant part: "[T]he . . . hearing officer shall render a final decision based upon all the evidence intro-

court, the plaintiff maintained that the hearing officer improperly had included the trust principal in the calculation of her "available" resources. The trial court agreed and reversed the fair hearing officer's decision.

The defendant, Joyce Thomas, the commissioner of the department, appealed from the trial court's judgment to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

On appeal, the defendant maintains that the trial court improperly determined that the plaintiff's "available" resources did not exceed the $1600 medicaid eligibility limitation. See General Statutes §§ 17b-264 and 17b-80 (c); Uniform Policy Manual, supra, § 4005.10. Specifically, the defendant claims that, pursuant to the medicaid qualifying trust provisions set forth at 42 U.S.C. § 1396a (k) (1988),[8] the entire trust principal is an asset "available" to the plaintiff, and that the trust principal, therefore, properly should be included in the calculation of the plaintiff's eligibility for medicaid benefits. See 42 U.S.C. § 1396a (a) (17) (B).[9] We disagree.

---

duced before him and applying all pertinent provisions of law, regulations and departmental policy. . . . Such decision after hearing shall be final except that the applicant for such hearing, if aggrieved, may appeal therefrom in accordance with section 4-183. . . ."

General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court . . . ."

[8] "[A] 'medicaid qualifying trust' is a trust . . . established (other than by will) by an individual . . . under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual." 42 U.S.C. § 1396a (k) (2) (1988). The amount of principal and income of a medicaid qualifying trust considered "available" to an applicant "is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. . . ." 42 U.S.C. § 1396a (k) (1) (1988).

[9] Title 42 of the United States Code, § 1396a (a) (17) (B) provides in relevant part that in determining eligibility for medicaid benefits, the department may

## I

Our analysis begins with an overview of the medicaid program. The program, which was established in 1965 as Title XIX of the Social Security Act and is codified at 42 U.S.C. § 1396 et seq. (medicaid act), is a joint federal-state venture providing financial assistance to persons whose income and resources are inadequate to meet the costs of, among other things, medically necessary nursing facility care. *Atkins* v. *Rivera*, 477 U.S. 154, 156, 106 S. Ct. 2456, 91 L. Ed. 2d 131 (1986); *Harris* v. *McRae*, 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980); *State* v. *Tuchman*, 242 Conn. 345, 347–48, 699 A.2d 952 (1997); *Burinskas* v. *Dept. of Social Services*, 240 Conn. 141, 148, 691 A.2d 586 (1997). The federal government shares the costs of medicaid with those states that elect to participate in the program, and, in return, the states are required to comply with requirements imposed by the medicaid act and by the secretary of the Department of Health and Human Services. *Atkins* v. *Rivera*, supra, 156–57. Specifically, participating states are required to " 'develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance' " to be provided. *Burinskas* v. *Dept. of Social Services*, supra, 148; *Ross* v. *Giardi*, 237 Conn. 550, 555, 680 A.2d 113 (1996); see also 42 U.S.C. § 1396a (a) (17).

Connecticut has elected to participate in the medicaid program and has assigned to the department the task of administering the program. General Statutes § 17b-2;[10] see *Burinskas* v. *Dept. of Social Services*, supra,

"[take] into account only such income and resources as are . . . available to the applicant . . . ."

[10] General Statutes § 17b-2 provides in relevant part: "The Department of Social Services is designated as the state agency for the administration of . . . (8) the Medicaid program pursuant to Title XIX of the Social Security Act . . . ."

240 Conn. 148; *Ross* v. *Giardi*, supra, 237 Conn. 555–56. Pursuant to General Statutes §§ 17b-262 and 17b-10,[11] the department has developed Connecticut's state medicaid plan and has promulgated regulations that govern its administration. See Uniform Policy Manual, supra.

The medicaid act requires that a state's medicaid plan make "medical assistance" available to qualified individuals. 42 U.S.C. § 1396a (a) (10). "The term 'medical assistance' means payment of part or all of the cost of . . . care and services . . . [including] nursing facility services . . . ." 42 U.S.C. § 1396d (a); see *Catanzano* v. *Wing*, 103 F.3d 223, 229 (2d Cir. 1996). Participating states are required to provide coverage to certain groups and are given the option to extend coverage to various other groups. The line between mandatory and optional coverage primarily is drawn in 42 U.S.C. § 1396a (a) (10) (A): mandatory coverage is specified in 42 U.S.C. § 1396a (a) (10) (A) (i); and optional coverage is set forth in subsection (a) (10) (A) (ii). In medicaid parlance, individuals who qualify for medicaid benefits pursuant to those subsections are referred to as the "categorically needy" because, in general, they are eligible for financial assistance under

[11] General Statutes § 17b-262 provides in relevant part: "The Commissioner of Social Services may make such regulations as are necessary to administer the medical assistance program. . . ."

General Statutes § 17b-10 (a) provides in relevant part: "The Department of Social Services shall prepare and routinely update state medical services and public assistance manuals and general assistance policy manuals . . . containing all departmental policy regulations and substantive procedure. . . ."

Section 17b-10-1 of the Regulations of Connecticut State Agencies provides in relevant part: "Pursuant to section 17b-10 of the Connecticut General Statutes, the Department of Social Services has prepared, and routinely updates, a state eligibility Policy Manual containing all departmental policy regulations and substantive procedures which affect the rights or procedures available to the public. In particular, the Policy Manual outlines the policies and procedures used by the department to implement and enforce federal and state laws for all of the programs which it administers. . . ."

Titles IV-A (Aid to Families with Dependent Children)[12] or XVI (Supplemental Security Income for the Aged, Blind, and Disabled)[13] of the Social Security Act.

Under the medicaid act, states have an additional option of providing medical assistance to the "medically needy"—persons who, like the plaintiff, lack the ability to pay for their medical expenses but do not qualify as "categorically needy" solely because their income exceeds the income eligibility requirements of the applicable categorical assistance program.[14] *Atkins* v. *Rivera*, supra, 477 U.S. 157–58; *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 37, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981); *Forsyth* v. *Rowe*, 226 Conn. 818, 824, 629 A.2d 379 (1993); *Matarazzo* v. *Rowe*, 225 Conn. 314, 319, 623 A.2d 470 (1993). The "medically needy" become eligible for medicaid, if the state elects to cover them, by incurring medical expenses in an amount sufficient to reduce their incomes below the income eligibility level set by the state in its medicaid plan. See 42 U.S.C. § 1396a (a) (17) (in determining eligibility, state must take "costs . . . incurred for medical care" into account); see also 42 C.F.R. § 435.301. "Only when they 'spend down' the amount by which their income exceeds that level, are [medically needy persons] in roughly the same position as [categorically needy] persons . . . [because then] any further expenditures for medical expenses . . . would have to come from funds required for basic necessities." *Atkins* v. *Rivera*, supra, 158. Connecticut has chosen to cover the medically needy. *Forsyth* v. *Rowe*, supra, 824.

The medicaid act, furthermore, requires participating states to set reasonable standards for assessing an individual's income and resources in determining eligibility

---

[12] See 42 U.S.C. § 601 et seq.

[13] See 42 U.S.C. § 1381 et seq.

[14] 42 U.S.C. § 1396a (a) (10) (C); 42 C.F.R. §§ 435.300 through 435.350.

for, and the extent of, medical assistance under the program. 42 U.S.C. § 1396a (a) (17); see also *Forsyth* v. *Rowe*, supra, 226 Conn. 824. The resources standard set forth in Connecticut's state medicaid plan for categorically needy and medically needy individuals is $1600. General Statutes §§ 17b-264 and 17b-80 (c); Uniform Policy Manual, supra, § 4005.10; see also *Forsyth* v. *Rowe*, supra, 824. Consequently, a person who has "available" resources; see 42 U.S.C. § 1396a (a) (17) (B); in excess of $1600 is not eligible to receive benefits under the Connecticut medicaid program even though the person's medical expenses cause his or her income to fall below the income eligibility standard.

Prior to 1986, however, the "availability" requirement of 42 U.S.C. § 1396a (a) (17) (B) provided a loophole by which individuals anticipating the need for expensive long-term nursing facility care could impoverish themselves and qualify for medicaid assistance while preserving their resources for their heirs. An individual could establish an irrevocable trust that permitted, but did not require, the trustee to disburse the income, but not the principal, of the trust to the individual. The trustee would pay the income from the trust to the grantor until the medicaid transfer "look back period" had expired and the grantor's transfer of assets to the trust, therefore, would no longer affect his eligibility for medicaid benefits. Thereafter, the trustee would exercise his discretion to withhold payments of trust income from the grantor. As a result, neither the trust principal nor the trust income would be resources "available" to the grantor within the meaning of § 1396a (a) (17) (B), and the grantor would qualify for medicaid assistance. See H.R. Rep. No. 99-265, pt. 1, pp. 71–72 (1985); see also *Forsyth* v. *Rowe*, supra, 226 Conn. 829.

Congress, however, tightened the "availability" loophole provided by § 1396a (a) (17) (B) of the medicaid act by enacting the medicaid qualifying trust provisions

set forth at 42 U.S.C. § 1396a (k) (1988). See H.R. Rep. No. 99-265, pt. 1, pp. 71–72 (1985); see also *Forsyth* v. *Rowe*, supra, 226 Conn. 829. "[A] 'medicaid qualifying trust' is a trust . . . established (other than by will) by an individual . . . under which the individual may be the *beneficiary of all or part of the payments from the trust* and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the *distribution to the individual.*"[15] (Emphasis added.) 42 U.S.C. § 1396a (k) (2) (1988). The amount of a medicaid qualifying trust considered "available" to an applicant for purposes of determining eligibility for medicaid benefits "is the maximum amount of payments that may be permitted under the terms of the trust to be *distributed to the grantor*, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount *to the grantor*. . . ." (Emphasis added.) 42 U.S.C. § 1396a (k) (1) (1988); see *Forsyth* v. *Rowe*, supra, 825. Thus, pursuant to § 1396a (k) (1), all possible distributions that a medicaid applicant is capable of receiving from a trust (i.e., trust assets that actually are distributed to the grantor and trust assets that could be, but are not, distributed to the grantor) are considered in determining eligibility for medicaid benefits.

## II

Before turning our attention to the provisions of the plaintiff's trust instrument that, in the defendant's view, grant the trustees discretion to distribute trust principal

[15] "Contrary to what the term implies, a finding of a 'medicaid qualifying trust' makes one ineligible for medicaid benefits. The term refers to a trust that is deemed to have been created in order to qualify for medicaid benefits and, for policy reasons, is considered an available asset to an applicant." *Forsyth* v. *Rowe*, supra, 226 Conn. 820 n.1; see generally J. Krauskopf, R. Brown, K. Tokarz & A. Bogutz, Elderlaw: Advocacy for the Aging (1993 & Sup. 1998) § 11.43.

"to the grantor" within the meaning of § 1396a (k) (1), we note that the analytical framework for construction of federal statutes set forth by the United States Supreme Court in *Chevron U. S. A., Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–45, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) (*Chevron*), is applicable to the medicaid act. See *Sullivan* v. *Everhart*, 494 U.S. 83, 89, 110 S. Ct. 960, 108 L. Ed. 2d 72 (1990); *Connecticut Dept. of Income Maintenance* v. *Heckler*, 471 U.S. 524, 530–31 n.16, 532, 105 S. Ct. 2210, 85 L. Ed. 2d 577 (1985). Under the *Chevron* analysis, we first must determine "whether the intent of Congress is clear as to the precise question at issue. . . . If, by employing traditional tools of statutory construction . . . we determine that Congress' intent is clear, that is the end of the matter . . . ." (Citations omitted; internal quotation marks omitted.) *Regions Hospital* v. *Shalala*, 522 U.S. 448, 457, 118 S. Ct. 909, 139 L. Ed. 2d 895 (1998); *Chevron U. S. A., Inc.* v. *Natural Resources Defense Council, Inc.*, supra, 842–43. "If a statute's meaning is plain, the [agency that administers the program] and reviewing courts must give effect to the unambiguously expressed intent of Congress." (Internal quotation marks omitted.) *Holly Farms Corp.* v. *National Labor Relations Board*, 517 U.S. 392, 398, 116 S. Ct. 1396, 134 L. Ed. 2d 593 (1996); *Chevron U. S. A., Inc.* v. *Natural Resources Defense Council, Inc.*, supra, 842–43.

"[I]f [however] the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. . . . If the agency's reading fills a gap or *defines a term in a reasonable way in light of [Congressional] design*, we give that reading controlling weight, even if it is not the answer the court would have reached if the question initially had arisen in a judicial proceeding." (Citation omitted; emphasis

added; internal quotation marks omitted.) *Regions Hospital* v. *Shalala,* supra, 522 U.S. 457; *Chevron U. S. A., Inc.* v. *Natural Resources Defense Council, Inc.,* supra, 467 U.S. 843. "[W]e must sustain the [agency's] approach so long as it is based on a permissible construction of the statute." (Internal quotation marks omitted.) *Auer* v. *Robbins,* 519 U.S. 452, 457, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997); *Chevron U. S. A., Inc.* v. *Natural Resources Defense Council, Inc.,* supra, 843. "When the legislative prescription is not free from ambiguity . . . [c]ourts . . . must respect the judgment of the agency empowered to apply the law to varying fact patterns . . . even if the issue with nearly equal reason [might] be resolved one way rather than another . . . ." (Citations omitted; internal quotation marks omitted.) *Holly Farms Corp.* v. *National Labor Relations Board,* supra, 517 U.S. 398–99.

"We accord deference to agencies under *Chevron,* not because of a presumption that they drafted the provisions in question, or were present at the hearings, or spoke to the principal sponsors; but rather because of a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley* v. *Citibank (South Dakota), N. A.,* 517 U.S. 735, 740–41, 116 S. Ct. 1730, 135 L. Ed. 2d 25 (1996); *Chevron U. S. A., Inc.* v. *Natural Resources Defense Council, Inc.,* supra, 467 U.S. 843–44. "Judicial deference to an agency's interpretation of ambiguous provisions of the statutes it is authorized to implement reflects a sensitivity to the proper roles of the political and judicial branches." *Pauley* v. *BethEnergy Mines, Inc.,* 501 U.S. 680, 696, 111 S. Ct. 2524, 115 L. Ed. 2d 604 (1991). Deference, moreover, is particularly warranted in cases in which

we are required to interpret the medicaid act, a statutory scheme that "is among the most intricate ever drafted by Congress." *Schweiker* v. *Gray Panthers,* supra, 453 U.S. 43; *Ross* v. *Giardi,* supra, 237 Conn. 564. "In a statutory area as complicated as this one, the administrative authorities are far more able than [the courts] to determine congressional intent in the light of experience in the field." (Internal quotation marks omitted.) *Ross* v. *Giardi,* supra, 564; *Lukhard* v. *Reed,* 481 U.S. 368, 383–84, 107 S. Ct. 1807, 95 L. Ed. 2d 328 (1987) (Blackmun, J., concurring); *Mowbray* v. *Kozlowski,* 914 F.2d 593, 598–99 (4th Cir. 1990).

### III

Before turning our attention to the terms of the trust instrument in order to ascertain whether it provides the trustees with any discretion to distribute trust principal *"to the grantor";* (emphasis added) 42 U.S.C. § 1396a (k) (1) (1988); we also note what this case does not involve. It does not involve the construction or application of the trust treatment provisions set forth at 42 U.S.C. § 1396p (d) of the medicaid act. Those provisions were enacted in 1993 in an effort to further tighten the "availability" loophole of 42 U.S.C. § 1396a (a) (17). Specifically, § 1396p (d) (3) (B) (i) provides in relevant part: "[I]f there are *any circumstances* under which payment from the trust could be made *to or for the benefit of the [grantor],* the portion of the corpus from which . . . payment to the individual could be made shall be considered resources available to the [grantor] . . . ." (Emphasis added.) The health care financing administration and the department have promulgated rules and regulations that implement § 1396p (d). Section 3259.6 (B) of the State Medicaid Manual, a publication of the Department of Health and Human Services that explains to the states how the health care financing administration applies statutory and regulatory provisions in administering the medicaid

program; see *Dept. of Medical Assistance* v. *Shalala*, 8 F.3d 1565, 1570 (11th Cir. 1993); provides that "where there are *any circumstances* under which payment can be made *to or for the benefit* of the [grantor] from all or a portion of the trust . . . [t]he portion of the corpus that could be paid *to or for the benefit* of the [grantor] is treated as a resource available to the [grantor] . . . . Payments . . . from the corpus that are made but not to or for the benefit of the [grantor] are treated as a transfer of assets for less than fair market value." (Emphasis added.) Department of Health and Human Services, Health Care Financing Administration, State Medicaid Manual (January–May, 1998) § 3259.6 (B) (State Medicaid Manual). Section 4030.80 (F) of the Uniform Policy Manual similarly provides that "[t]he Department considers the portion of the corpus of a trust . . . to be an available asset . . . if there are *any circumstances* under which a payment from the trust could be made *to or on behalf of the individual.* . . . The department considers [such] payments to be . . . the individual's income, if the payments are *to or for the benefit* of the individual; and . . . a transfer of assets by the individual . . . if the payments are for any other purpose. . . ." (Emphasis added.)

Although the transfer provisions set forth at § 1396p (d) of the medicaid act supersede the medicaid qualifying trust provisions set forth at 42 U.S.C. § 1396a (k) (1988), the transfer provisions apply only to trusts established after August 11, 1993, and do not apply to trusts, such as the one at issue in the present case, established prior to that date. See State Medicaid Manual, supra, § 3259.2; see also Uniform Policy Manual, supra, § 4030.80 (C) and (D). Because the medicaid act specifically provides that states may base eligibility determinations *only* on income and resources that are "available" to the applicant within the meaning of the act; see 42 U.S.C. § 1396a (a) (17) (B); and because

§ 1396p (d) does not apply to the trust at issue in the present case, the regulations and guidelines that implement § 1396p (d) also are not applicable to the trust at issue in the present case. Thus, we are not required to determine whether there are "any circumstances" under which the trust instrument provides the trustees with discretion to make payments of trust principal "for the benefit of" or "on behalf of" the plaintiff. Instead, all that we must determine is whether the trust instrument provides the trustees with discretion to distribute trust principal "*to the grantor*" within the meaning of § 1396a (k) (1). (Emphasis added.) See State Medicaid Manual, supra, § 3259.2 (trusts established before August 11, 1993 are governed by medicaid qualifying trust provisions rather than by transfer provisions); see also Uniform Policy Manual, supra, § 4030.80 (C) (same).

## IV

We turn our attention now to the medicaid qualifying trust provisions set forth at 42 U.S.C. § 1396a (k) (1988). Our point of departure is the language employed by Congress, for "[i]f the intent of Congress is clear, that is the end of the matter." (Internal quotation marks omitted.) *Good Samaritan Hospital* v. *Shalala*, 508 U.S. 402, 409, 113 S. Ct. 2151, 124 L. Ed. 2d 368 (1993); *Chevron U. S. A., Inc.* v. *Natural Resources Defense Council, Inc.*, supra, 467 U.S. 842–43. Section 1396a (k) (1) provides that the portion of a medicaid qualifying trust considered "available" to an applicant for purposes of determining eligibility for medicaid benefits "is the maximum amount of payments that may be permitted under the terms of the trust to be *distributed to the grantor,* assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount *to the grantor.* . . ." (Emphasis added.) The plaintiff argues that the statutory language is clear: in her view, the language "payments . . . distributed to the grantor" must be read to mean only

distributions of trust assets that may be made directly to the grantor and cannot be read also to mean distributions that may be made to procure a benefit for the grantor. The defendant, however, argues to the contrary that the language "payments . . . distributed to the grantor" in § 1396a (k) (1) refers not only to payments of trust assets that may be made directly to the grantor but also to payments of trust assets that indirectly benefit the grantor. In our view, the language of § 1396a (k) does not itself clearly settle the issue.

The legislative history of § 1396a (k), moreover, is also inconclusive with respect to congressional intent regarding whether the phrase "payments . . . distributed to the grantor" in § 1396a (k) (1) was intended to encompass payments of which the grantor is an indirect beneficiary. See H.R. Rep. No. 99-265, pt. 1, p. 72 (1985) ("The . . . bill provides that for the purposes of determining Medicaid eligibility, the amounts deemed available to a grantor . . . is the maximum amount of payments permitted to be distributed . . . *to the grantor.* . . . [W]hat is determinative is the maximum amount that a trustee could . . . distribute *to [the] grantor* . . . ." [Emphasis added.]); H.R. Rep. No. 99-453, p. 539 (1985) (medicaid qualifying trust is trust "under which the [grantor] is the *beneficiary . . . of the payments* from the trust" [emphasis added]); H.R. Rep. No. 99-453, p. 539 (1985) ("amount deemed available to the beneficiary is the *maximum amount of payments* that may be permitted under the terms of the trust" [emphasis added]). Although the reference to the grantor as a "beneficiary . . . of payments" supports a construction of § 1396a (k) (1) that includes payments indirectly benefiting the grantor, because the legislative history of § 1396a (k) also refers to payments *to the grantor*, it does not conclusively rule out a construction of § 1396a (k) as encompassing only payments made directly to the grantor. We conclude, therefore,

that Congress did not speak precisely, either through the language or legislative history of § 1396a (k), to the question of whether, in determining the extent to which the assets of a medicaid qualifying trust are "available" to a grantor, it intended that "payments . . . distributed to the grantor" encompass not only payments directly to the grantor but also payments of which the grantor is an indirect beneficiary.

Because Congress has not spoken conclusively on the meaning of the language "payments . . . distributed to the grantor" in § 1396a (k) (1), we proceed to the second step of the *Chevron* analytical framework: agency interpretation of § 1396a (k). Congress has assigned responsibility for administering the eligibility requirements of the medicaid program to the secretary of the Department of Health and Human Services. 42 U.S.C. § 1396a (a) (17) (B).[16] In particular, Congress has delegated to the secretary the responsibility for prescribing standards for determining an applicant's "available" income and resources. 42 U.S.C. § 1396a (a) (17) (B). The secretary, in turn, has delegated the responsibility for administration of the medicaid program to the health care financing administration of the Department of Health and Human Services. See 42 U.S.C. § 1302; *Visiting Nurse Assn. of North Shore, Inc.* v. *Bullen,* 93 F.3d 997, 999 n.1 (1st Cir. 1996), cert. denied, 519 U.S. 1114, 117 S. Ct. 955, 136 L. Ed. 2d 842 (1997). Consequently, a determination of whether, and to what extent, a trustee has discretion to distribute trust principal "to the grantor" within the meaning of § 1396a (k) (1) is guided by the regulations and interpretive guidelines that have been adopted by that agency. *Visiting Nurse Assn.*

---

[16] Title 42 of the United States Code, § 1396a (a) (17) (B) provides in relevant part that the state medicaid plan shall "provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the [secretary of the Department of Health and Human Services], available to the applicant . . . ."

*of North Shore, Inc.* v. *Bullen,* supra, 1002; *Himes* v. *Shalala,* 999 F.2d 684, 688–89 (2d Cir. 1993). The task that confronts us is to decide, not whether the agency's interpretation of the phrase "payments . . . distributed to the grantor" in § 1396a (k) (1) represents the best construction of the statute, but whether it represents a reasonable one. See *Atlantic Mutual Ins. Co.* v. *Commissioner of Internal Revenue,* 523 U.S. 382, 389, 118 S. Ct. 1413, 140 L. Ed. 2d 542 (1998); *Cottage Savings Assn.* v. *Commissioner of Internal Revenue,* 499 U.S. 554, 560–61, 111 S. Ct. 1503, 113 L. Ed. 2d 589 (1991); see also *Vanscoter* v. *Sullivan,* 920 F.2d 1441, 1449 and n.14 (9th Cir. 1990) ("reasonable" interpretation of statute by Department of Health and Human Services accorded deference); *St. Mary's Hospital of Troy* v. *Blue Cross & Blue Shield Assn./Blue Cross & Blue Shield of Greater New York,* 788 F.2d 888, 890 (2d Cir. 1986) ("interpretive guides" regarding medicare and medicaid entitled to be given weight).

The health care financing administration's interpretive guidelines[17] regarding medicaid qualifying trusts established prior to August 11, 1993, are found at § 3215 of the State Medicaid Manual. See State Medicaid Manual, supra, §§ 3215 and 3259. Section 3215.1 of the State Medicaid Manual specifically provides that "the terms of [a medicaid qualifying] trust may be written so that the trustee may make *payments directly to the health care provider for medical services.* Thus, although payments from the trust are not directly paid to the beneficiary, he is *in fact receiving benefits from the payments.* . . ." (Emphasis added.) Consequently, § 3215.1 of the State Medicaid Manual clearly indicates that, in the view of the health care financing administration, in order to constitute a payment "to the grantor"

---

[17] The health care financing administration has not promulgated regulations regarding the medicaid qualifying trust provisions of 42 U.S.C. § 1396a (k) (1). See generally 42 C.F.R.

within the meaning of 42 U.S.C. § 1396a (k), a payment need not be made directly to the grantor.

The medicaid act, moreover, generally requires that a "medically needy" individual's eligibility for medicaid benefits be determined in accordance with the methodology and financial criteria applicable to the determination of a "categorically needy" person's eligibility for benefits under the Supplementary Security Income (SSI) program. 42 C.F.R. §§ 435.401, 435.601, 435.831 and 435.845.[18] The regulations governing eligibility for SSI benefits provide in relevant part that "[i]ncome is anything you receive in cash or in kind that you can use to meet your needs for food, clothing, and shelter. . . . In-kind income is not cash, but is actually food, clothing, or shelter, or something you can use to get one of these." 20 C.F.R. § 416.1102. Taken together, the relevant regulations governing eligibility for SSI benefits and § 3215.1 of the State Medicaid Manual therefore indicate that a trustee need not disburse funds directly to a grantor in order for the disbursement to constitute a payment "to the grantor" within the meaning of § 1396a (k) (1); payments that are made to a third party who then provides equivalent "in kind" income to the grantor—food, clothing or shelter for the grantor or something that could be used to obtain food, clothing or shelter for the grantor—also constitute payments "to the grantor" for purposes of § 1396a (k) (1).

Section 3215.3 of the State Medicaid Manual, moreover, provides that "[t]he amount from the trust that is deemed to be available to the [grantor] is the maximum

---

[18] Under what has become known as the § 209 (b) option, states may elect to provide medicaid assistance only to those individuals who would have been eligible to receive such assistance under the financial criteria of the state medicaid plan in effect on January 1, 1972. States thus become either SSI states or § 209 (b) states. Connecticut has elected the § 209 (b) option. *Ross* v. *Giardi*, supra, 237 Conn. 556–57. The defendant does not dispute that Connecticut's status as a § 209 (b) state is not relevant to this appeal.

amount that could have been distributed to the [grantor] under the terms of the trust *in an applicable budget period*,[19] provided the trustee exercised his full discretion under the terms of the trust to distribute the maximum amount to the [grantor]. The maximum distributable amount deemed available includes only amounts *which can be but are not distributed* from either the income (interest) or principal of the trust. . . . The maximum distributable amount counts as resources. . . ." (Emphasis added.) Thus, the State Medicaid Manual directs the states to deem available as a resource any amount that could have been, but was not, distributed during the *applicable budget period* directly to the grantor, or paid to a third party in exchange for "in kind" income to be provided to the grantor.

The health care financing administration's interpretation of the medicaid qualifying trust provisions of § 1396a (k) accords with the Congressional purpose of precluding individuals from using discretionary trusts as a mechanism to qualify for medicaid benefits while preserving their assets for their heirs. There is nothing unreasonable about an interpretation of § 1396a (k) (1) that treats trust assets that a trustee could, but does not, distribute either directly or indirectly to a grantor during an applicable benefit period as resources that become "available" to the grantor during that period. We conclude, therefore, that in order for trust principal, or a portion thereof, to become a resource "available" to a grantor pursuant to § 1396a (k) (1): (1) the trustee must have authority during an applicable benefit period to disburse trust assets directly to the grantor, or to a third party who provides equivalent "in kind" income

---

[19] Section 435.831 (a) (1) of the Code of Federal Regulations provides in relevant part that states "must use budget periods of not more than 6 months to compute income" of medically needy individuals.

to the grantor; and (2) the trustee must decline to exercise that authority.[20]

## V

The defendant maintains that the trust instrument provides the trustees with discretion to make payments of trust principal that, for purposes of § 1396a (k) (1), are payments "to the grantor" and that consequently the entire trust principal properly may be included in the calculation of the plaintiff's eligibility for medicaid.

We begin our analysis of the trust instrument by noting that "we cannot rewrite . . . a trust instrument. The expressed intent must control, although this is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the . . . [grantor] when the instrument was executed, including the condition of [her] estate, [her] relations to [her] family and beneficiaries, and their situation and condition. *The construing court will put itself as far as possible in the position of the . . . [grantor], in the effort to construe . . . [any] uncertain language used by [her] in such a way as shall, conformably to the language, give force and effect to [her] intention. . . .* But [t]he quest is to determine the meaning of what the . . . [grantor] said and not to speculate upon what [she] meant to say." (Citation omitted; emphasis added; internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Lyman*, 148 Conn. 273, 278–79, 170 A.2d 130 (1961).

## A

The defendant first claims that article I of the trust instrument provides the trustees with discretion to distribute the entire trust principal "to the grantor" within

[20] Thus, trust assets that actually are distributed to the grantor are treated as income to the grantor and are evaluated under the applicable income eligibility rules. Trust assets that could be distributed to the grantor, but

the meaning of § 1396a (k) (1). To support her claim, the defendant relies on the following language in article I of the trust instrument: "Upon the death of the [plaintiff], the [trustees] shall distribute any remaining trust principal to . . . such person or persons . . . upon such conditions and terms, as the [plaintiff] shall direct and appoint by a Will expressly referring to and exercising this power . . . provided, however, that this power shall not be exercisable to any extent for the benefit of the [plaintiff], [her] estate, [her] creditors or the creditors of [her] estate. Any trust principal not effectively so appointed shall be disposed of pursuant to Article II."

In trusts and estates parlance, the provision of article I on which the defendant relies commonly is referred to as a testamentary power of appointment. The Internal Revenue Code provides that, when a transfer of assets is subject to such a power of appointment, the transfer is an "incomplete" gift and consequently does not subject the transferor to imposition of transfer taxes (i.e., gift taxes) at the time of the transfer. See 26 U.S.C. §§ 2501 and 2511; see also 26 C.F.R. § 25.2511-2 (b).[21] Instead, even if title to assets has been transferred irrevocably to the trust, the transferred assets still are considered part of the transferor's gross taxable estate for federal estate tax purposes. See 26 U.S.C. § 2036 (a) (2).

are not, are treated as resources available to the grantor and are evaluated under the resource eligibility rules.

[21] Section 2501 of the Internal Revenue Code imposes a tax on the transfer of property by gift, and § 2511 sets forth the transfers to which the tax is applicable. A transfer is complete, and, therefore, subject to imposition of gift tax, if the donor retains no power to change the disposition of the property. 26 C.F.R. § 25.2511-2 (b). If the donor retains any power over the property's disposition, however, the gift may be wholly incomplete or partially complete and partially incomplete. 26 C.F.R. § 25.2511-2 (b). In particular, a gift is incomplete "if and to the extent that a reserved power gives the donor the power to name new beneficiaries or to change the interests of the beneficiaries as between themselves . . . ." 26 C.F.R. § 25.2511-2 (c).

Generally, if a grantor reserves a testamentary power of appointment, the transfer of assets to the trust does not become "complete" for tax purposes until the death of the transferor and the subsequent distribution of the assets to the remaindermen. At that point, transfer taxes (i.e., estate taxes)[22] are levied on the transferor's gross taxable estate.[23] Such testamentary powers of appointment commonly are used to preserve trust principal during the lifetime of a grantor and thereby maximize the amount of income the trust provides to the grantor.[24]

Nothing in the language of the trust instrument before us suggests that the testamentary power of appointment contained in article I was intended to serve any purpose other than to forestall the imposition of transfer taxes until after the plaintiff's death. In fact, the trust instrument specifically provides that the power of appointment cannot be exercised by the trustees for the benefit of the plaintiff, her estate, her creditors or the creditors of her estate. That restriction unequivocally demonstrates that the power of appointment was not intended to provide the trustees either with the authority to pay trust principal directly or indirectly to the plaintiff or with discretion to withhold such payments of trust principal.

The defendant, moreover, does not maintain that the power of appointment provides the trustees with authority or discretion to disburse trust principal

---

[22] The United States Supreme Court has defined the federal estate tax as "an excise imposed upon the transfer of . . . property at death." *United States Trust Co.* v. *Helvering*, 307 U.S. 57, 60, 59 S. Ct. 692, 83 L. Ed. 1104 (1939).

[23] A single tax rate schedule applies to the cumulative total of a decedent's lifetime and testamentary taxable transfers. 26 U.S.C. § 2001 (c); see generally J. Price, Contemporary Estate Planning (1992) § 2.3.

[24] Because a testamentary power of appointment maximizes the amount of income the trust provides to the grantor, it also maximizes the amount that a medically needy person must "spend down" before becoming eligible for medicaid benefits.

directly or indirectly to the plaintiff during an applicable budget period. Instead, the defendant contends that the power of appointment allows the trustees, on the plaintiff's death, to pay trust principal, not to the plaintiff, but to the remaindermen *on behalf of* the plaintiff. In the defendant's view, such a payment to the remaindermen after the plaintiff's death constitutes a payment "to the grantor" under § 1396a (k) (1) because it indirectly benefits the plaintiff by furthering her estate planning objectives. The defendant apparently asks us to import into § 1396a (k) (1) the provisions of § 1396p (d) regarding the existence of "any circumstances" under which payments may be made "on behalf of" the grantor.[25] This we cannot do. In order for a trustee to have discretion to make a payment "to the grantor" within the meaning of § 1396a (k) (1), the trust instrument must provide the trustee with authority to disburse trust funds during an applicable budget period either directly to the grantor or to a third party in exchange for "in kind" income to be provided to the grantor, and the trust instrument must also provide the trustee with discretion to withhold such payments of trust principal. Because any disbursement of trust principal to third party remaindermen pursuant to the power of appointment contained in article I of the trust instrument would not take place in an applicable budget period and would not be made in exchange for "in kind" income to be provided to the plaintiff by the remaindermen, such a disbursement cannot constitute a payment "to the grantor" within the meaning of § 1396a (k) (1).

Furthermore, if, at the time of her death, the plaintiff has not exercised her power of appointment, article II

---

[25] We express no opinion regarding whether payments of trust principal to remaindermen after a grantor's death constitute payments for the "benefit of" or payments "on behalf" of the grantor within the meaning of 42 U.S.C. § 1396p (d).

of the trust instrument directs the trustees to distribute the trust principal to certain named remaindermen. The defendant does not claim that such payment to the designated remaindermen constitutes a payment "to the grantor" within the meaning of § 1396a (k) (1), perhaps because if such disbursements were to constitute payments "to the grantor," the entire principal of every medicaid qualifying trust would constitute a resource "available" to the grantor, effectively eliminating the concept of medicaid qualifying trusts altogether. The fact that, subsequent to the enactment of the medicaid qualifying trust provisions of § 1396a (k), Congress enacted the transfer provisions of § 1396p (d) of the medicaid act to restrict further the use of trusts as vehicles for qualifying for medicaid benefits while preserving assets for a grantor's heirs is indisputable evidence that distributions of trust principal to remaindermen after the grantor's death do not constitute payments "to the grantor" within the meaning of § 1396a (k) (1). We can discern no reason to distinguish a payment of trust principal that is made upon a grantor's death to remaindermen identified in the trust instrument itself and a payment of trust principal that is made upon a grantor's death to remaindermen identified in the grantor's will.

We conclude, therefore, that the testamentary power of appointment contained in article I of the trust instrument does not provide the trustees with either authority or discretion to distribute trust principal "to the grantor" within the meaning of § 1396a (k) (1). Consequently, article I of the trust instrument does not provide a basis for treating the trust principal as a resource "available" to the plaintiff for purposes of determining her eligibility for medicaid benefits.

B

The defendant next claims that article VI (B) of the trust instrument provides the trustees discretion to distribute trust principal "to the grantor" within the mean-

ing of § 1396a (k) (1). Article VI (B) provides in relevant part that "[i]f any income tax or taxes shall be levied, assessed or imposed on the [plaintiff] as a result of any sale by the [trustees] of any principal asset of the trust . . . the [trustees] *shall* pay to the [plaintiff], out of the trust, such cash sum or sums as [she] shall request in writing for the purpose of paying such tax or taxes . . . . Such payment *shall* be made to the [plaintiff] upon the presentation to the [trustees] of a copy of the income tax return setting forth such payment . . . and the amount of such tax." (Emphasis added.)

A brief review of the law regarding taxation of trusts is helpful to our resolution of this claim. The "grantor trust" provisions of the Internal Revenue Code are found at 26 U.S.C. §§ 671 through 678. Those provisions enumerate circumstances in which the general rule that a trust is taxed as a separate entity is not followed on the theory that to apply the rule would improperly permit the grantor to escape tax on income that rightfully should be taxed to him. See 26 C.F.R. §§ 1.671-2 (a) and (d) and 1.671-3 (a).

Under the grantor trust provisions of the Internal Revenue Code, a grantor may be liable for income tax not only on the ordinary income of a grantor trust; see 26 U.S.C. § 677;[26] see also 26 C.F.R. § 1.671-3 (b) (1) (ordinary trust income included in grantor's taxable income by reason of grantor's interest in such income); but also on capital gains realized by the trust. See 26 U.S.C. § 671 (grantor treated as owner of trust corpus to extent of retained interest in trust corpus);[27] see also

---

[26] Title 26 of the United States Code, § 677 (a), of the Internal Revenue Code, provides in relevant part: "(a) General rule

"The grantor shall be treated as the owner of any portion of a trust . . . whose income . . . may be—

"(1) distributed to the grantor . . . ."

[27] Title 26 of the United States Code, § 671, of the Internal Revenue Code, provides in relevant part: "Where it is specified in [§§ 671 through 678] that the grantor . . . shall be treated as the owner of any portion of a trust,

26 C.F.R. § 1.671-3 (b) (2). In particular, 26 U.S.C. § 674 (a)[28] of the Internal Revenue Code provides that "[t]he grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus . . . *is subject to a power of disposition, exercisable by the grantor . . . .*" (Emphasis added.) See 26 C.F.R. § 1-674 (a)-1. Thus, pursuant to § 674 (a), a grantor who retains a power of appointment over trust principal generally is treated as the owner of that principal, and any taxable gain realized by the trust generally is included in the grantor's taxable income. Section 674 (b) of the Internal Revenue Code, however, further provides in relevant part that § 674 (a) *"shall not apply to . . . [a] power exercisable only by will,* other than a power in the grantor to appoint by will the income of the trust where the income is accumulated for such disposition . . . ." (Emphasis added.)

Because, in the present case, article I of the trust instrument directs the trustees to distribute the net trust income to the plaintiff, the trust is a "grantor trust"; see 26 U.S.C. § 677; 26 C.F.R. § 1.671-3 (a) (1); and consequently, the trust's income is subject to taxation pursuant to §§ 671 through 678 of the Internal Revenue Code. Apparently addressing the fact that there are circumstances under which capital gains realized by a grantor trust are included in the grantor's taxable

there shall then be included in computing the taxable income . . . of the grantor . . . those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust . . . ."

[28] Title 26 of the United States Code, § 674, of the Internal Revenue Code, provides in relevant part: "(a) General Rule

"The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor . . . .

"(b) Exceptions for certain powers

"Subsection (a) shall not apply to . . . (3) . . . A power exercisable only by will, other than a power in the grantor to appoint by will the income of the trust where the income is accumulated for such disposition . . . ."

income, article VI (B) of the trust instrument *requires* that the trustees pay trust principal to the plaintiff to the extent necessary to permit her to satisfy any income tax liability that has accrued to her by virtue of the trust's realization of capital gains.

The defendant did not raise the issue of the effect of article VI (B) on the plaintiff's eligibility for medicaid benefits before the fair hearing officer or before the trial court. Nevertheless, the defendant now apparently contends that pursuant to § 674 (a) of the Internal Revenue Code, capital gains realized by the trust are includable in the plaintiff's taxable income and that, as a result, trust principal is available for distribution to the plaintiff. There is nothing in the record before us, however, to indicate that the trust in fact has realized a capital gain that caused the plaintiff to incur income tax liability during an "applicable budget period." See State Medicaid Manual, supra, § 3215.3. Moreover, the power of appointment that the plaintiff reserved in article I of the trust instrument only provides her with authority to appoint trust beneficiaries in her will. There is nothing in the record to suggest that the exemption set forth in § 674 (b) of the Internal Revenue Code for a reservation of a power of appointment by will is not applicable to the trust. Consequently, the record before us does not permit a conclusion that, if the trust were to incur capital gains, the plaintiff would be treated as the owner of trust principal pursuant to 26 U.S.C. § 674 (a) for purposes of taxation of the capital gains. Thus, the record also does not permit a conclusion that article VI (B) is capable of providing the trustees either with authority to pay existing trust principal during *any applicable budget period* whatsoever or with discretion to withhold such payment. Consequently, the record before us also does not permit a conclusion that article VI (B) provides the trustees with authority to pay trust principal "to the grantor" within the meaning of § 1396a

(k) (1). Article VI (B) of the trust instrument, therefore, does not provide a basis for treating any portion of the trust principal as a resource "available" to the plaintiff for purposes of determining her eligibility for medicaid benefits.[29]

C

The defendant's final claim is that articles VI (A) and VII of the trust agreement provide the trustees with authority to disburse trust principal "to the grantor" within the meaning of § 1396a (k) (1). Article VI (A) provides in relevant part that "all estate, inheritance, transfer, succession, legacy and other similar taxes . . . which shall become payable upon or with respect to . . . property comprising a part of the trust estate . . . and required to be included in the [plaintiff's] taxable estate . . . shall be paid out of the principal of the trust estate . . . . If the assets of the [plaintiff's] testamentary estate . . . are insufficient to pay any such taxes . . . out of the [plaintiff's] estate, or any debts, funeral or administration expenses of the [plaintiff's] estate, or any preresiduary cash legacies given by the [plaintiff's] Will, the [trustees] shall pay to . . . the Executor or Administrator of the estate of the [plaintiff], out of the principal of the trust estate . . . such amount or amounts as may be necessary to pay such taxes, debts, expenses or legacies. . . . *Any amounts paid under this Article shall be paid out of and limited to assets or the proceeds of assets which are subject to the federal estate tax on the [plaintiff's] estate. . . .*" (Emphasis added.)

Article VII (F) provides in relevant part: "Upon the death of the [plaintiff], the [trustees] may . . . pur-

---

[29] We express no opinion as to whether, if the plaintiff were to incur a tax liability as a result of the trust's realizing a capital gain, payment of trust principal to the plaintiff in order to allow her to satisfy that tax liability would constitute income to the plaintiff during an applicable budget period for purposes of determining her eligibility for medicaid benefits.

chase property from the [plaintiff's] estate, make loans to the [plaintiff's] estate, and guarantee the obligations of the [plaintiff's] estate and pledge trust property as security therefor . . . . This provision shall not give either the [plaintiff] or [her] estate any right or authority over trust property. . . . *The [trustees] shall not satisfy any obligation of the [plaintiff's] estate with any property which is exempt from federal or state death taxes.*" (Emphasis added.)

i

We begin with the provision of article VI (A) that directs the trustees to pay "all estate, inheritance, transfer, succession, legacy and other similar taxes . . . which shall become payable upon or with respect to . . . property comprising a part of the trust estate . . . ." The defendant maintains that the authorization to pay such "death" taxes provides the trustees with discretion to pay trust principal "to the grantor" within the meaning of § 1396a (k) (1). Payment of such taxes, however, would not be made directly to the plaintiff or to a third party in exchange for "in kind" benefits to be provided to the plaintiff.[30] Nor could such payment possibly take place in an "applicable budget period." Furthermore, the trust instrument does not provide the trustees with discretion to withhold such payments. Consequently, payment of such taxes is not capable of constituting a payment "to the grantor" within the meaning of § 1396a (k) (1).

ii

We next consider the provisions of article VI (A) regarding payment of the estate taxes, funeral expenses and administration expenses of the plaintiff's estate and payment of any preresiduary cash legacies given by the

---

[30] Liability for such taxes rests with the grantor's taxable estate, not with the grantor.

plaintiff's will. Any such payments similarly would not be made in exchange for "in kind" income to be provided to the plaintiff by the recipient of the payment. Moreover, because the plaintiff's death is a condition precedent to the trustees having authority to disburse funds pursuant to these provisions of the trust instrument, such disbursements cannot be made during any "applicable budget period." Furthermore, the trust instrument also does not provide the trustees with discretion to withhold such payments. Consequently, any amount the trustee might be capable of disbursing pursuant to these provisions of the trust instrument also is not capable of constituting a payment "to the grantor" within the meaning of § 1396a (k) (1).

### iii

The provision of article VII (F) that authorizes the trustees to use trust principal to purchase property from, and make loans to, the plaintiff's estate similarly does not permit the trustees to disburse principal either directly to the plaintiff or to a third party in exchange for "in kind" benefits to be provided to the plaintiff. Such transactions would benefit the plaintiff's estate, not the plaintiff, and would take place after the plaintiff's death. Consequently, this provision also does not permit the trustees to disburse trust principal to the plaintiff within the meaning of § 1396a (k) (1).

### iv

We turn our attention now to the provisions of articles VI (A) and VII that authorize the trustees to pay the debts of the plaintiff's estate, to guarantee the obligations of the plaintiff's estate and to pledge trust property as security for those obligations. The defendant maintains that those provisions provide the trustees with discretion to disburse the entire trust principal "to the grantor" within the meaning of § 1396a (k) (1). Specifically, disregarding the fact that such payments only

may be made after the plaintiff's death and the fact that *such payments are required rather than discretionary,* the defendant claims that these provisions of the trust instrument permit trust principal to be applied to satisfy obligations, such as credit card debt, incurred by the plaintiff during her lifetime.[31] The defendant impliedly argues that because after-death payments of trust principal could be used to provide the plaintiff "in kind" income during her lifetime, such payments constitute payments of trust principal during an "applicable budget period."

---

[31] The plaintiff is an income beneficiary, but not a principal beneficiary, of the trust. Because the plaintiff is not a principal beneficiary of the trust, her interest in the trust does not permit her creditors to reach the trust principal. Compare *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 27 A.2d 166 (1942).

Moreover, article I of the trust instrument explicitly states that the plaintiff's power of appointment "shall not be exercisable to any extent for the benefit of the [plaintiff], [her] estate, [her] creditors or the creditors of [her] estate." Thus, the plaintiff's power of appointment is a nongeneral power. See 2 Restatement (Second), Property § 11.4 (1986) ("A power of appointment is general if it is exercisable in favor of any one or more of the following: the [holder] of the power, the [holder's] creditors, the [holder's] estate, or the creditors of the [holder's] estate. . . . Any other power of appointment is a nongeneral one."); see also General Statutes § 12-345b (same); 26 U.S.C. § 2041 (b) (same); 26 U.S.C. § 2514 (c) (same); J. Price, Contemporary Estate Planning (1992) §§ 10.22 and 10.23 (distinguishing general and nongeneral [special] powers of appointment). Because it is nongeneral, the plaintiff's power of appointment does not permit the plaintiff's creditors to reach the trust principal. See 2 Restatement (Second), Property § 13.1 (1986); compare 1 Restatement (Second), Trusts § 156, comment (c) (1959).

Furthermore, if a medicaid recipient somehow were to borrow funds or make credit card purchases during an applicable budget, the funds borrowed and items purchased would constitute income within the meaning of the medicaid act. See 20 C.F.R. § 416.1102. Consequently, the recipient would be required to "spend down" such income. In other words, such income would have to be applied to the cost of the recipient's nursing home care; it could not be used to enrich the recipient's lifestyle. See 42 U.S.C. § 1396a (a) (17); *Atkins* v. *Rivera,* supra, 477 U.S. 158. Moreover, if the amount the recipient borrowed were to exceed the cost of the recipient's nursing home care, the recipient would then have an asset that would be included in the calculation of the recipient's continued eligibility for medicaid assistance. See General Statutes § 17b-80 (c).

Even if we assume, without deciding, however, that such after-death payments constitute payments "to the grantor" within an applicable budget period, this provision of the trust instrument still would not provide a basis for concluding that the entire trust principal is "available" to the plaintiff. Articles VI (A) and VII of the trust instrument only permit the trustees to make such after-death payments with trust assets not subject to federal estate tax. Thus, in order to ascertain the extent to which trust principal possibly could be paid "to the grantor" under these provisions, we must determine the amount of trust principal that is subject to federal estate tax.

The federal estate tax generally is calculated using a three-step methodology: (1) a tentative estate tax is determined by applying the tax rate schedule set forth at 26 U.S.C. § 2001 (c) to the sum of a decedent's total lifetime taxable gifts and testamentary transfers; (2) the total gift tax already paid by the decedent on taxable lifetime gifts then is subtracted from the tentative estate tax; and (3) the decedent's actual estate tax is calculated by then subtracting the lifetime transfer tax credit allowable for the year of the decedent's death. See 26 U.S.C. §§ 2001 and 2010; see generally J. Price, Contemporary Estate Planning (1992) § 2.3. Thus, the effect of the lifetime transfer tax credit is to exempt from federal estate tax a cumulative total of a decedent's lifetime gifts and testamentary transfers, and the total amount so exempted is dependent upon the year of the decedent's death. For the years 1998, 1999 and 2000, the federal estate exemptions are $625,000, $650,000 and $675,000, respectively. 26 U.S.C. § 2010.

The defendant did not raise before the fair hearing officer or before the trial court the issue of the effect of the provisions of the trust instrument that address payment of the obligations of the plaintiff's estate, and the record before us does not permit a determination

as to what extent the plaintiff already has made taxable gifts that will fall within her lifetime federal estate tax exemption. Because it is not now possible to determine either what the value of the trust principal will be at the time of the plaintiff's death or to what extent such principal will be exempt from federal estate taxation, we also cannot determine the amount of trust principal, if any, that will become payable under these provisions of the trust instrument.

The medicaid act specifically provides, however, that in determining eligibility for medicaid benefits, states may consider *only* income and resources that are available to the applicant. 42 U.S.C. § 1396a (a) (17) (B); see also H.R. Rep. No. 99-453, p. 538 (1985) ("[u]nder [§ 1396a (a) (17)], only income and resources actually available to an individual are considered in determining eligibility"); H.R. Rep. No. 99-265, pt. 1, p. 73 (1985) (§ 1396a [k] does not permit states to "[deem] available to a beneficiary assets that have been irrevocably placed in trust and over which the trustee can exercise no discretion whatsoever"). Thus, even if after-death payment of the obligations of the plaintiff's estate were somehow to constitute, as the defendant maintains, payments "to the grantor" during an applicable budget period, the provisions of the trust instrument that direct the trustees to make such payments would not provide a basis for concluding that the entire trust principal is a resource "available" to the plaintiff.

Furthermore, if the plaintiff actually were to incur debts while receiving medicaid benefits, any benefit she received in exchange for such debt would be treated as income and she would be required to apply that income to her medical expenses, thereby lessening the amount of medicaid assistance she would receive from the medicaid program. More important, Connecticut's state medicaid plan provides that "[u]pon the death of . . . any person who has at any time been a beneficiary

of [medical assistance], the state shall have a claim against such . . . person's estate for all amounts paid on behalf of . . . such person . . . . Such claims shall have priority over all unsecured claims against such estate,[32] except (1) expenses of last sickness not to exceed three hundred seventy-five dollars, (2) funeral and burial expenses in accordance with section 17b-84 and (3) administrative expenses . . . ."[33] General Statutes § 17b-95. Section 17b-95, therefore, requires that the plaintiff's medicaid debt be satisfied prior to the payment of other personal debts, such as credit card debts, that she incurs. Thus, even if we assume, without deciding, that the provisions of the trust instrument that permit trust funds to be used to meet the obligations of the plaintiff's estate are capable of making trust principal "available" to the plaintiff within the meaning of § 1396a (k), § 17b-95 restricts the portion of principal that is "available" to the plaintiff pursuant to those provisions to only those funds that remain after the plaintiff's medicaid debt has been paid.

Finally, we note that if the trust provisions permitting the payment of trust principal to satisfy the obligations of the plaintiff's estate had been omitted from the trust instrument altogether, no portion of the trust principal would have been capable of becoming available on her

[32] Article IV of the trust instrument provides: "The . . . [trust] principal . . . shall be used only for the personal benefit of the designated beneficiaries of the trust, and no distributions or expenditures of trust assets shall be made except to or for the benefit of a trust beneficiary. *To the fullest extent permitted by law, the interest of each trust beneficiary shall not be subject to any form of pledge, assignment, sale, attachment, garnishment, execution, or other form of transfer.*" (Emphasis added.) Thus, the trust instrument clearly indicates that the plaintiff has not retained any power to borrow against or pledge trust assets as security.

[33] The provision of General Statutes § 17b-95 addressing funeral and administration expenses buttresses our conclusion in part V C ii of this opinion that payments of such expenses do not constitute payments "to the grantor" within the meaning of § 1396a (k) (1).

death to satisfy her medicaid debt. Consequently, construing these provisions as providing the trustees with authority to pay the entire trust principal to the plaintiff within the meaning of § 1396a (k) would have the effect of discouraging grantors from including such provisions in trust instruments, thereby increasing, rather than decreasing, total medicaid expenditures.

We conclude, therefore, that the provisions of the trust instrument that address the obligations of the plaintiff's estate do not provide the trustees with either authority or discretion to make payments "to the grantor" within the meaning of § 1396a (k) (1). Consequently such provisions do not provide a basis for including trust principal in the calculation of the plaintiff's eligibility for medicaid.

Because the trust instrument does not provide the trustees with authority or discretion to distribute trust principal "to the grantor" within the meaning of § 1396a (k) (1), the principal of the trust is not a resource "available" to the plaintiff and it therefore cannot be included in the calculation of her eligibility for medicaid benefits.

The judgment is affirmed.

In this opinion BORDEN, NORCOTT, KATZ, PALMER and MCDONALD, Js., concurred.

BERDON, J., dissenting. The plaintiff, Mildred F. Ahern, established a trust in 1993 for the obvious purpose of insulating her principal assets—which exceed $600,000—in order to render herself eligible for benefits under the Title XIX Medicaid Program (medicaid), a government program designed to allocate scarce funds among the poor. *Harris* v. *McRae*, 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980) ("[t]he medicaid program was created in 1965 . . . for the purpose of providing federal financial assistance to States that

choose to reimburse certain costs of medical treatment for needy persons").

As it exists in Connecticut, medicaid accords certain benefits to indigents with assets of $1600 or less. See General Statutes §§ 17b-264 and 17b-80 (c). So, for example, in order to become eligible, a person with $1700 must "spend down" $100 so that his or her assets do not exceed this limit. The majority's unusual decision today allows the plaintiff to reap the benefits of medicaid while retaining control over principal assets of more than $637,937. Congress never intended such a result. Indeed, when confronted by the specter of affluent persons exploiting medicaid so that they could insulate their wealth and live off the public fisc, members of Congress have expressed their outrage in no uncertain terms. "The Committee feels compelled to state the obvious. Medicaid is, and always has been, a program to provide basic health coverage to people who do not have sufficient income or resources to provide for themselves. *When affluent individuals use Medicaid qualifying trusts and similar 'techniques' to qualify for the program, they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children. This is unacceptable to the Committee.*" (Emphasis added.) H.R. Rep. No. 99-265, pt. 1, p. 72 (1985).

In 1988, such abuses prompted Congress to enact legislation that provides that the assets of certain trusts are to be considered available to the grantors in determining eligibility for medicaid even if they were not distributed to the grantor/beneficiaries themselves. Congress has labeled these trusts "medicaid qualifying trusts" (qualifying trusts). "[A] 'medicaid qualifying trust' is a trust or similar legal device, *established . . . by an individual . . . under which the individual may be the beneficiary* of all or part of the payments from the trust and the distribution of such payments

is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual." (Emphasis added.) 42 U.S.C. § 1396a (k) (2) (1988). The portion of principal and income from a qualifying trust considered "available" to an applicant "is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the *full exercise of discretion* by the trustee or trustees for the distribution *of the maximum amount* to the grantor. . . ." (Emphasis added.) 42 U.S.C. § 1396a (k) (1) (1988). The United States Department of Health and Human Resources, when interpreting these sections, defined "availability" as "the maximum amount that could have been distributed to the beneficiary under the terms of the trust in an applicable budget period . . . ." Department of Health and Human Services, Health Care Financing Administration, State Medicaid Manual (January–May, 1998) § 3215.3 (State Medicaid Manual).

Thus, the 1988 federal legislation and corresponding federal administrative policy and procedure manual did not explicate precisely the test for "availability." As a result, in 1993, Congress amended 42 U.S.C. § 1396p, providing that the test for availability is whether "there are *any circumstances* under which payment from the trust could be made to or for the benefit of the individual . . . ." (Emphasis added.) 42 U.S.C. § 1396p (d) (3) (B) (i) (1993 amendment).

The majority concludes that the 1988 qualifying trusts legislation, which was in effect when the plaintiff created the trust at issue, provided that the test for availability should be based on the maximum amount that could have been distributed *under the actual circumstances* of the applicable budget period. Based upon that assumption, the majority holds that the principal of the trust is not available to the plaintiff. The majority's predicate assumption is absolutely incorrect.

The majority justifies its conclusion that the test for availability is the maximum amount that could have been distributed under the actual circumstances rather than under any circumstances is based upon provisions of the State Medicaid Manual implementing the 1993 amendments and thereby providing for a test under any circumstances. It is correct that the state and federal administrative policy and procedure manuals interpreting the 1993 amendments to 42 U.S.C. § 1396p explicitly set forth a test for availability that considers potential disbursements under any circumstances for trusts that were established on or after August 11, 1993, the effective date of the 1993 amendment. State Medicaid Manual, supra, § 3259.2; Department of Social Services, Uniform Policy Manual (1993) § 4030.80 (C) and (D). The majority, however, cites no evidence that Congress intended to change, not merely clarify,[1] the law when it enacted the 1993 amendment or that the language of the federal or state administrative manuals indicates that trusts established before August 11, 1993, should be tested under a different standard than trusts established after that date.

In fact, just the opposite is true; the federal government's State Medicaid Manual, supra, § 3259.2, interpreting 42 U.S.C. § 1396p (d) as amended by the 1993 amendment, provides: "For the period prior to [August 11, 1993], you may use any reasonable interpretations of the statute in dealing with trusts. . . ." Moreover, the legislative history of the 1993 amendment does not indicate that it was intended to change the present law. The Supreme Judicial Court of Massachusetts agrees that the 1993 amendment sheds no light on the prior intentions of Congress when interpreting a trust established based on pre-August 11, 1993 statutes. *Cohen* v.

---

[1] According to the general rules of statutory construction, a clarification of a statute by the legislature is effective retroactively. *Toise* v. *Rowe*, 243 Conn. 623, 628, 707 A.2d 25 (1998); see, e.g., *Lawrence* v. *Shaw*, 300 U.S. 245, 249, 57 S. Ct. 443, 81 L. Ed. 623 (1937).

*Commissioner of Medical Assistance,* 423 Mass. 399, 407, 668 N.E.2d 769 (1996).

Consequently, we must look to the language of the statute in effect prior to the 1993 amendment, without the benefit of any legislative history, in order to determine whether the 1993 amendment was intended to change or clarify the law. See 42 U.S.C. § 1396a (k) (1) (1988) (portion of trust principal and income considered "available" to applicant "is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor").[2] Second, we must read § 1396a (k) in light of the federal government's post-August 11, 1993 administrative mandate that we "use any reasonable interpretations of the statute in dealing with" the plaintiff's trust in order to determine the appropriate test for availability. State Medicaid Manual, supra, § 3259.2. Third, we also must examine § 3215.3 of the State Medicaid Manual, the section in effect when the plaintiff established the trust at issue. Id., § 3215.3 (defining availability as "the maximum amount that could have been distributed to the beneficiary under the terms of the trust in an applicable budget period").

I conclude that the availability test includes possible distributions *under any circumstances.* The Supreme Judicial Court of Massachusetts came to the same conclusion when it held that "[t]he [pre-1993 amendment] is most naturally read to measure the maximum amount (principal or income) to be deemed available to the grantor, asking what is the greatest amount the trustees *in any circumstances* have discretion to disburse." (Emphasis added.) *Cohen* v. *Commissioner of Medical*

---

[2] I agree with the majority that "to the grantor" encompasses distributions made directly to the grantor and those made indirectly for her benefit.

*Assistance,* supra, 423 Mass. 411. More specifically, an asset should be deemed to be available if the payment of which provides the grantor an indirect benefit during an applicable budget period. To conclude otherwise would allow a medicaid recipient to take advantage of or be benefited indirectly by cash, credit or in kind income in an applicable budget period. The majority's interpretation to the contrary is not merited by the language of the statute or the medicaid manuals, nor does it result in a workable or fair test.[3] The correct test is whether the settlor has insulated principal over which the trustee has discretion to distribute under any circumstances; if that is so, the settlor has created a qualifying trust and its principal assets should be included as available income when determining medicaid eligibility.

Accordingly, we must determine whether any or all of the principal of the trust established by the plaintiff is available to the plaintiff under any circumstances. I conclude, based upon any one of the following four provisions of the trust and our common law, that the entire principal is available to her. First, article I of the trust provides that "[u]pon the death of the [plaintiff], the [trustees] shall distribute any remaining trust principal to . . . such person or persons . . . upon such conditions and terms, as the [plaintiff] shall direct and appoint by a Will expressly referring to and exercising this power . . . ." By keeping a general power of appointment over the distribution of the principal the plaintiff potentially benefits during her life in a variety of ways.[4] For example, by virtue of retaining this power,

---

[3] Indeed, the majority is unable to cite to authority from any other jurisdiction to support its novel interpretation that a qualifying trust created in this time period must be measured by the "actual circumstances" rather than "any circumstances."

[4] This is true despite the fact that article I further provides: "[T]his power [of appointment] shall not be exercisable to any extent for the benefit of the [plaintiff], [her] estate, [her] creditors or the creditors of [her] estate.

the plaintiff's creditors can avail themselves of the trust principal, and, therefore, the state may consider it to be an asset in calculating the plaintiff's available funds.

This reading of the trust comports with our general law of trusts. When the grantor of a trust reserves the income for himself and retains the power to designate in his will the beneficiary of the corpus, as in the present case, the trust principal can be reached by creditors, regardless of whether it was the intention of the grantor to defraud creditors. 1 Restatement (Second), Trusts § 156, comment (c) (1959) ("[i]f the settlor reserves for his own benefit not only a life interest but also a general power to appoint the remainder by deed or will or by deed alone or by will alone, his creditors can reach the principal of the trust as well as the income"). This has been our established law; see *Greenwich Trust Co.* v. *Tyson*, 129 Conn. 211, 219, 27 A.2d 166 (1942); which this court set forth as early as 1851. *Johnson* v. *Connecticut Bank*, 21 Conn. 148, 159 (1851). Furthermore, this construction on the availability of the principal of the trust should come as no surprise to the plaintiff. In a well reasoned Superior Court decision, Judge Satter, applying § 156 of the Restatement (Second) of Trusts under Maryland law, came to the same conclusion that the principal assets of a similar trust had to be considered when determining eligibility for medicaid. *Cantor*

---

. . ." Such language has no effect because the power to appoint in and of itself is a benefit to the plaintiff. Notwithstanding the majority's argument to the contrary in footnote 31 of its opinion, § 11.4 of the Restatement (Second) of Property, regarding general and nongeneral powers of appointment, does not control the trust in the present case for it refers to trusts created by settlors who are not beneficiaries. Furthermore, the Restatement (Second) of Property was published after the Restatement (Second) of Trusts; § 156 of the Restatement (Second) of Trusts instead refers to § 328 of the first Restatement of Property, which states a rule of law that is analogous to § 156. Lastly, even if General Statutes § 12-345b could be construed so as to support the majority opinion, which it does not, the statute explicitly limits its definition of "general power of appointment" to General Statutes §§ 12-345b through 12-345f, which relate to taxation.

v. *Dept. of Income Maintenance*, 40 Conn. Sup. 554, 558–59, 531 A.2d 608 (1985), aff'd, 12 Conn. App. 435, 531 A.2d 606 (1987).

Second, the income tax provision in article VI (B) of the trust requires the trustee to pay to the plaintiff "any income tax or taxes . . . levied, assessed or imposed on the [plaintiff] as a result of any sale by the [trustees] of any principal asset of the trust . . . ." Accordingly, if the trust realizes a capital gain, the amount the trustee would pay to the plaintiff pursuant to this provision would entail a payment "to the grantor" pursuant to 42 U.S.C. § 1396a (k) (1) (1988). Therefore, the largest amount that the trustee possibly could be required to pay to the plaintiff in order to cover such taxes is available to the plaintiff.[5] The majority's argument that no principal is available to the plaintiff pursuant to article VI (B) because there is no evidence that there was a capital gain in an "applicable budget period" applies the wrong test for "availability." In addition, the majority's conclusion that the plaintiff is not considered to be the owner of the entire principal under 26 U.S.C. § 674 (1994) (capital gains taxes),[6] therefore the principal is not available, does not refute the fact that payment by

[5] Unless this amount is somehow discernable in a hypothetical context, it is fair for the defendant to deem available the entire principal. The majority amazingly reached the opposite conclusion when it found that an amount that determines how much of the principal could be deemed to be available is not determinable at present. For example, the majority concludes that because the amount of trust principal that will be subject to federal estate tax is presently unknown, none of the trust principal should be considered available to the plaintiff. See the subsequent discussion in this dissent regarding articles VI and VII of the trust. Such a reading unjustifiably favors the grantor, who is trying to take advantage of a government program designed to help the needy.

[6] Title 26 of the United States Code, § 674 (1994), which is a part of the Internal Revenue Code, provides in relevant part: "(a) General rule

"The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor . . . .

the trustee to the plaintiff, if there was a capital gain, would still be a direct distribution to the plaintiff.

Such an ability places the trust squarely within § 156, comment (e), of the Restatement (Second) of Trusts, which provides that, "[w]here by the terms of the trust a trustee is to pay the settlor or apply for his benefit as much of the income or principal as the trustee may in his discretion determine, his transferee or creditors can reach the maximum amount which that trustee could pay to him or apply for his benefit." This comment would still be applicable even if the settlor did not retain a general power of appointment over the principal. Accordingly, because the plaintiff's creditors could reach the entire principal pursuant to article VI (B) of the trust, it is available to the plaintiff.

Third, the death tax provision in article VI (A) of the trust allows the trustee to pay out of the trust principal if the plaintiff's assets are insufficient to cover her "*debts, funeral or administrative expenses*" and any "*cash legacies given by*" the plaintiff in her will. (Emphasis added.) It further provides that any amounts paid under this article shall be paid only out of assets that are subject to the federal estate tax on the plaintiff's estate. The fact that the trustee has the authority to pay the plaintiff's debts, regardless of when they were accrued, and cash legacies given in her will, is sufficient to support the state's determination that the principal is available when determining medicaid eligibility. Accordingly, the entire principal would be considered to be available to the plaintiff because it is not determinable exactly how much of the principal (1) will be subject to the federal estate tax on the plaintiff's estate and (2) will be paid

"(b) Exceptions for certain powers

"Subsection (a) shall not apply to . . .

"(3) . . . A power exercisable only by will, other than a power in the grantor to appoint by will the income of the trust where the income is accumulated for such disposition . . . ."

to satisfy the plaintiff's inter vivos debts. Furthermore, although the actual payments from the trust principal will occur after the plaintiff's death, such distributions fall within the definition of an indirect distribution "to the grantor" because the plaintiff can receive an inter vivos benefit.[7] Once again, the principal is reachable by creditors based on article VI (A) of the trust, and, therefore, should be considered available to the plaintiff. See Restatement (Second), supra, § 156.

Fourth and finally, article VII (F) of the trust provides: "Upon the death of the [plaintiff], the [trustees] may . . . make loans to the [plaintiff's] estate, guarantee the obligations of the [plaintiff's] estate and pledge trust property as security therefor . . . ." Again, these activities can only utilize principal that is subject to federal, estate or death taxes. Article VII creates discretionary powers in the trustee that are similar to the powers created by article VI in that they enable the plaintiff to benefit during her life based on the trustees' powers to distribute trust principal to her estate after her death. As a result, article VII makes the trust principal available to the plaintiff during her life based on the reasons detailed previously.

In sum, these provisions confer discretion upon the trustee or require the trustee to distribute principal,

---

[7] This is true despite the fact that General Statutes § 17b-95 creates a claim in the state for all medicaid payments that the state has paid for the individual. General Statutes § 17b-95 ("[U]pon the death of any person who has at any time been a beneficiary of [medical assistance] . . . the state shall have a claim against such . . . person's estate for all amounts paid on behalf of . . . such person . . . . Such claims shall have priority over all unsecured claims against such estate, except (1) expenses of last sickness not to exceed three hundred seventy-five dollars, (2) funeral and burial expenses in accordance with section 17b-84, and (3) administrative expenses . . . ."). Under the statute, this claim has priority over general creditors. Even if the plaintiff's estate reimbursed the state in part or in full from the trust principal, however, that does not vitiate the fact that the plaintiff could have received inter vivos indirect disbursements or payments in kind based on the trust principal.

thereby allowing for, at the very least, indirect payments or benefits to the plaintiff during her life, making the principal available to her pursuant to 42 U.S.C. § 1396 (k) (1) (1988). In other words, each of these possible circumstances satisfies the availability test for the principal of the plaintiff's trust. Consequently, the principal of the trust is available to the plaintiff.

This reading comports with our public policy that we will not allow the device of the trust to be used in order to insulate the assets of a person. *Greenwich Trust Co.* v. *Tyson*, supra, 129 Conn. 219. In *Greenwich Trust Co.*, we made clear that "[t]he attempt of a man to place his property in trust for his own benefit under limitations similar to those which characterize a spendthrift trust is a departure from the underlying basis for the creation of such trusts. That aside, the public policy which sustains such trusts when created for the benefit of another is, where the settlor is himself the beneficiary, overborne by other considerations. In *Johnson* v. *Connecticut Bank*, [supra, 21 Conn. 159], where we were considering the right of the creditor of a beneficiary of a trust to secure satisfaction from the latter's right to the income, we stated: 'It is the policy of our law, that *all* the property of a debtor should be responsible for his debts. And his equitable estate may be taken, as well as his legal, provided it is subject to his controul'; and, subject to definite limitations, that has always been the policy of our law. *D'Addario* v. *Abbott*, 128 Conn. 506, 509, 24 Atl. (2d) 245 [1941]. To admit the validity of such trusts would open too wide an opportunity for a man to evade his just debts to be permissible unless sanctioned by statutory enactment. This is the reason why the overwhelming weight of authority holds ineffective attempts to establish them." (Emphasis in original.) *Greenwich Trust Co.* v. *Tyson*, supra, 219. The control of the plaintiff in this case is underscored by

her right to designate who will obtain the principal upon her death.

The majority of the court allows a wealthy plaintiff—with assets in excess of $600,000—to take advantage of a program established to care for the medical needs of the poor. In the process, this court ignores our recent case in which we recognized "the legislative concern that the medicaid program not be used as an estate planning tool. The medicaid program would be at fiscal risk if individuals were permitted to preserve assets for their heirs while receiving medicaid benefits from the state. Congress enacted the qualifying trust provision as an addition to the 'provisions designed to assure that individuals receiving nursing home and other long-term care services under Medicaid are in fact poor and have not transferred assets that should be used to purchase the needed services before Medicaid benefits are made available.' H. Rep. No. 99-265, 99th Cong., 1st Sess. 71 (1985)." *Forsyth* v. *Rowe*, 226 Conn. 818, 828–29, 629 A.2d 379 (1993).

The plaintiff's trust, with the approval of the majority, allows for a form of inverse Robin Hoodism—robbing from the poor to give to the rich. Because I believe that the construction that the majority places on the trust is unjust and contrary to both our well established law and the United States Code, I dissent.