[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff David R. Reynolds appeals the decision of the fair hearing officer upholding the actions of the defendant department of social services (department) terminating his Title XIX medical assistance and establishing a spend down period. The hearing was held pursuant to General Statutes §§ 17b-60, 17b-61, 4-176e and 4-184. The plaintiff appeals pursuant to General Statutes §§ 17b-61 and 4-183.
In his appeal the plaintiff raises four issues. He first argues that the department is estopped from denying his application for Medicaid/Title XIX eligibility because of the notices it sent on August 20, 1998, and October 3, 1998, and because of its actions on August 27, 1998. He further argues that the department incorrectly considered his inheritance as income, not as an asset. He also argues that the lump sum rules of the department's Uniform Policy Manual (UPM) violate federal and state law in plain language and as interpreted by the department. Finally he claims that because the department failed to issue a decision within sixty days after the close of the fair hearing, the decision is void.
The following facts are undisputed and found in the record. The plaintiff is a nursing facility patient who was granted Title XIX medical assistance for long term care on April 1, 1997. On January 17, 1998, the plaintiff's stepfather died, naming the plaintiff as a beneficiary of his estate. On August 18, 1998, the probate court approved the distribution to the plaintiff of his share of the estate in the amount of $114,060.62. On August 20, 1998, the department sent the plaintiff a notice advising him that he had too much income to qualify for continued medical assistance and that he would not be eligible to receive medical assistance until his medical bills totaled $119,190.24. That notice also stated that since $116,736.69 worth of medical bills had been shown to the department, only $2,453.64 was needed to restart assistance. On August 27, 1998, the plaintiff's counsel wrote the department informing it that the plaintiff voluntarily terminated his eligibility for Title XIX assistance and that the plaintiff made a $10,000 gift to his son. On August 27, 1998, the department discontinued the plaintiff's medical assistance. On September 30, 1998, plaintiff's counsel wrote the department with the plaintiff's application for medical assistance commencing September 20, 1998, and claiming medical expenses of more than $2,453.64. On October 3, 1998, the department notified the plaintiff that he had too much income to qualify for medical assistance and that he would not be eligible to receive medical assistance until his medical bills total $119,190.24. That notice also stated that $110,736.60 had been shown to the department, so that only $8,453.64 was needed to CT Page 6880 restart assistance.
On November 5, 1998, the department sent a letter to the plaintiff's counsel informing him that the inheritance received by the plaintiff is counted as a "lump sum source of income and applied equally over a six month spend down period." (Return of Record (ROR) 19.) Explaining the application of six month cycles, the department's letter indicated that the plaintiff "is ineligible for Title XIX nursing home payments from 9-1-98 through 2-28-98 as his applied income exceeds nursing home payment." (ROR 19.)[1]
On November 19, 1998, the plaintiff through counsel filed a petition requesting a fair hearing to determine his eligibility commencing September 20, 1998. The fair hearing was scheduled for and held on January 5, 1999[2]. The record remained open until February 4, 1999, for additional information. On April 30, 1999, the hearing officer issued his decision concluding:
 The Department is not upheld its action of October 3, 1998 to deny a Title 19 Medical Assistance reapplication of September 30, 1998. The Department's action of August 27, 1998 to "discontinue" the appellant's case, the reapplication of September 30, 1998 and the denial notice of October 3, 1998 are void. The Department's action of August 20, 1998 to terminate Title XIX Medical Assistance and to establish a spend down period for August 1, 1998 to January 31, 1999 for excess income of $119,190.24 including a countable lump sum inheritance of $114,060.62 was the correct, unappealable and overriding case action.
(ROR 7)
On May 11, 1999, the plaintiff filed a petition for reconsideration with the department. (ROR 267-71.) On May 17, 1999, the department denied the petition. (ROR 272-73.) On June 23, 1999, the plaintiff filed this appeal.
A basic principle of administrative law is that the scope of the court's review is very limited.
 Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions. Connecticut LightCT Page 6881 Power v. Dept. of Public Utilities Control, 219 Conn. 51, 57 . . . (1991); Woodbury Water Co. v. Public Utilities Commission, 174 Conn. 258, 260 . . . (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587 . . . (1993); Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262
. . . (1990); Baerst v. State Board of Education, 34 Conn. App. 567, 571, cert. denied, 230 Conn. 915. . . (1994).
(Internal quotation marks omitted.) Cabasquini v. Commissioner of SocialServices, 38 Conn. App. 522, 525-26, cert. denied, 235 Conn. 906 (1995).
General Statutes § 4-183 (j) in part provides:
 The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
As to questions of law, the Supreme Court has recently stated that the deferential standard does not apply to a court's review of an "agency's construction of a statute, which is a pure question of law, particularly when the question has not been subjected to prior judicial review."Connecticut Light Power Co. v. Texas-Ohio Power, Inc., 243 Conn. 635,644 (1998). Otherwise, deference is accorded to the agency's construction of the statute it is empowered to enforce by applying subsection (6) of General Statutes § 4-183 (j). See id., 642.
The primary claim of the plaintiff in this appeal is that the department is estopped from denying his application of September 20, 1998. He bases this claim on the issuance to him of two incorrect notices from the department and the action the department took on August 28, CT Page 6882 1998. According to the plaintiff the notices indicated that the plaintiff would be eligible for Title XIX assistance upon the payment of certain medical bills and the department temporarily discontinued the plaintiff from the program in response to the plaintiff's counsel's letter. These actions, the plaintiff contends, were consistent with a reading of the Uniform Policy Manual that the inheritance proceeds would be considered an accessible asset. The defendant responds that the notices, while erroneous as to the amount of spend down did correctly notify the plaintiff that the inheritance was considered excess income and that all of that excess income needed to be spent on medical expenses. It further claims the plaintiff's interpretation of the regulations to characterize the inheritance as an accessible asset was not validated by the department's actions in discontinuing his benefits in response to his attorney's August 27, 1998 letter. Therefore, the defendant argues, the plaintiff could not have reasonably relied on the misinformation or the discontinuation in August 1998, to his detriment.
There is no question that the department made not one but several errors in managing the plaintiff's case. There is a question as to the effect of these mistakes in light of the court's limited scope of review. In claiming estoppel the plaintiff here must initially prove that the department did or said "something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." Chotkowski v. State, 240 Conn. 246, 268 (1997). Both parties cite the case of Kimberly-Clark Corporation v. Dubno,204 Conn. 137, 146-48 (1987), which discusses the application of estoppel to the commissioner of revenue services.[3] There, the court said:
 Although this court has not had occasion to determine specifically whether the conduct of the department of revenue services gives rise to estoppel, this court has said that, in certain limited circumstances, estoppel may be invoked against a municipality. See, e.g., Zoning Commission v. Lescynski, 188 Conn. 724, 731, 453 A.2d 1144 (1982), and cases cited therein. In Lescynski, we recognized that as a general rule, estoppel may not be invoked against a public agency in the exercise of its governmental functions. . . . Nevertheless, we noted that an exception to this general rule is made where the party claiming estoppel would be subjected to a substantial loss if the public CT Page 6883 agency were permitted to negate the acts of its agents. . . . We perceive no reason why this limited exception should not apply in an appropriate case to estop the department of revenue services, especially in view of its statutory authority to render declaratory rulings. See Connecticut Bank Trust Co. v. Tax Commissioner, 178 Conn. 243, 423 A.2d 883
(1979) (this court dismissed the plaintiff's claim of estoppel not because the commissioner of revenue services is not subject to estoppel but because the elements of estoppel had not been established).
(Emphasis added; citations omitted.) Id, 147.
Applying the law to this case, the court must reject the claim of estoppel. While the department sent notices with incorrect amounts, the notices did correctly notify the plaintiff as to his ineligibility and the need to spend his excess income on medical bills. Based upon the timing of the notices and their content, the court cannot find the plaintiff exercised due diligence to determine the department's position as to the plaintiff's ineligibility. The notices were not so misleading as to induce the plaintiff to reasonably act to incur a substantial loss. Further, the record shows that plaintiff's attorney was informed of the department's position as to the inheritance in August 1998. (ROR 228.)
The plaintiff's second claim is that the department incorrectly considered his inheritance as income rather than an asset. He refers to a section of the department's Uniform Policy Manual in support of his argument. That section is § 4015.05C and sets forth types of inaccessible assets. It reads
 Assets considered inaccessible to the assistance unit include, but are not limited to:
1. property in probate,
(ROR 47.)
The plaintiff argues that since his inheritance was an inaccessible asset during the probating of the estate, it must now be an accessible asset. He refers to no other provision of the Uniform Policy Manual.
The department refers to the provisions defining income in kind. UPM § 5000.01. Included in that provision is a definition of lump sum as "an amount of money which is received by an assistance unit as a one time basis and is not expected to review." (ROR 32.) The lump sum is CT Page 6884 considered income during the six month eligibility period, although any part remaining thereafter would be considered an asset. UPM § 4030.45;(ROR 34.) As noted by the hearing officer in this decision,
 The Department policy at Section 4030.45 concerning types of lump sum payments lists but does not limit lump sum payments to the such one time, non-recurring payments as an insurance claim, lottery winnings, a personal injury or property claim settlement, retroactive payments, etc. An inheritance is such a payment although not specifically listed.
(ROR 5.)
The court will not disturb the reasonable conclusion of the hearing officer. See Ahern v. Thomas, 248 Conn. 708, 725 (1999).
The plaintiff also claims that the lump sum rules within the department's Uniform Policy Manual violate federal and state law. Specifically, he claims that by treating his inheritance as income subject to a six month medical spend down, the department has implemented a regulation more restrictive or burdensome then is permitted under federal law as recognized in Ross v. Giardi, 237 Conn. 550 (1996). InRoss v. Giardi, the court held that Connecticut, as a § 209(b) state,
 may choose to apply more restrictive eligibility criteria to applicants for medicaid benefits than the federal government applies to applicants for SSI benefits. The state, however, may not apply eligibility criteria that are more restrictive than the criteria contained in its medicaid plan in effect on January 1, 1972.
Id. 557-58.
The plaintiff has not made a showing that treatment of the inheritance as lump sum income is more restrictive than the criteria in the medicaid plan in effect in Connecticut in 1972. Moreover, the denial of eligibility resulted from the plaintiff receiving an inheritance of $114,000 and spending only $8,500 of that amount on medical bills. The plaintiff has not presented any evidence that the 1972 medicaid plan would be less restrictive in these circumstances. Accordingly, the court rejects this claim.
Turning to the plaintiff's claim that the untimeliness of the decision of the fair hearing officer voids the decision, the court rejects this CT Page 6885 claim. The applicable statute is General Statutes § 17b-61. Subsection (a) of that statute reads as follows:
 Not later than sixty days after such hearing, or three business days if the hearing concerns a denial of or failure to provide emergency housing, the commissioner or his designated. hearing officer shall render a final decision based upon all the evidence introduced before him and applying all pertinent provisions of law, regulations and departmental policy, and such final decision shall supersede the decision made without a hearing, provided final definitive administrative action shall be taken by the commissioner or his designee within ninety days after the request of such hearing pursuant to section 17b-60. Notice of such final decision shall be given to the aggrieved person by mailing him a copy thereof within one business day of its rendition. Such decision after hearing shall be final except as provided in subsections (b) and (c) of this section.
Here the record remained open until February 4, 1999, and the hearing officer issued a decision on April 30, 1999, some eighty five days later. While this is an unfortunate occurrence, especially in light of the erroneous notices that began this saga, it does not warrant invalidating the decision. As our Supreme Court has recently instructed us, "the use of the word `shall' though significant, does not invariably establish a mandatory duty." Angelsea Productions, Inc. v. Commission on Human Rights Opportunities, 236 Conn. 681, 690 (1996). There are other considerations in determining the intent of the legislature to whether the time period for rendering a decision under § 17b-61 is mandatory so that noncompliance would invalidate the action.
 One . . . reliable guide in determining whether a statutory provision is directory or mandatory is whether the failure of the state to comply with its provisions results in either a penalty or a requirement that the state seek an extension of time.
Doe v. Statewide Grievance Committee, 240 Conn. 671, 681-82 (1997).
Here, neither option is included in § 17b-61 (a). Because the court finds that the time period for the hearing officer to render a decision is not mandatory but directory, the untimely decision is not void.
Because the plaintiff has not met his burden under General Statute CT Page 6886 § 4-183 (j), the appeal is dismissed.
DiPentima, J.