******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARY PALOMBA-BOURKE *v.* COMMISSIONER
OF SOCIAL SERVICES
(SC 19044)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Espinosa, Js.

*Argued January 8—officially released June 17, 2014*

*Jeffrey R. Lindequist,* with whom was *Scott A. Storms,* for the appellant (plaintiff).

*Hugh Barber,* assistant attorney general, with whom, on the brief, was *George Jepsen,* attorney general, for the appellee (defendant).

*Opinion*

EVELEIGH, J. The plaintiff in this administrative appeal, Mary Palomba-Bourke, appeals from the judgment of the trial court affirming the decision of the administrative hearing officer, in favor of the defendant, the Commissioner of Social Services (department).[1] The plaintiff contends on appeal that the department failed to apply the correct eligibility and availability of assets criteria when evaluating the application for Medicaid benefits submitted by the plaintiff's spouse, Daniel Bourke. We disagree and, accordingly, we affirm the judgment of the trial court.

Bourke applied to the department for Medicaid benefits in 2009 and, in 2010, the department informed Bourke that, based on its review of the combined assets of both Bourke and the plaintiff, Bourke was not currently eligible to receive Medicaid benefits. The plaintiff then sought an administrative hearing to contest the department's determination of Bourke's eligibility.[2] The hearing officer denied her appeal of the department's decision, and the plaintiff appealed to the Superior Court.[3] The Superior Court dismissed her appeal. This appeal followed.[4]

The relevant facts in the present case are undisputed, and are recounted in the decisions of both the administrative hearing officer and the Superior Court. On September 10, 1968, the plaintiff's husband at the time, Edward Palomba, created the Edward A. Palomba residual trust (trust), and, upon his death on September 5, 1976, the plaintiff was made a beneficiary of the trust. The trust was intended to permit the trustees to provide for, in their sole discretion, the education and support of Palomba's children, and for the support of the plaintiff. As of April, 2010, the principal of the trust was equal to $514,977.17. In 2000, the plaintiff married Bourke. Bourke, who is not a beneficiary of the trust, entered a long-term care facility on February 2, 2009, while the plaintiff continued to reside in the community. On August 3, 2009, Bourke applied for Medicaid benefits, and on June 9, 2010, the department conducted its analysis of the combined assets of the plaintiff and Bourke and concluded that, based on the total value of their combined assets, Bourke was not at that time eligible for Medicaid benefits. Specifically, the department concluded that, including the value of the trust, the couple's combined assets totaled $655,624.61. Pursuant to state regulation; see Dept. of Social Services, Uniform Policy Manual § 4005.10 (A) (2) (a) (Uniform Policy Manual);[5] Bourke, as the individual applying for benefits, could not hold more than $1600 in assets, and that the plaintiff, as a "community spouse"[6] could not have greater assets than the applicable "community spouse protected amount" (protected amount),[7] which the hearing officer found to be $109,540. Thus, because the department determined that the couple's combined assets exceeded

$111,140,[8] it concluded that Bourke was not eligible for Medicaid benefits.

The plaintiff contested the department's determination and sought an administrative hearing to challenge it. Specifically, the plaintiff objected to the department's decision to count the value of the trust when determining the total value of the assets available to Bourke. The plaintiff claimed that, in including the value of the trust in Bourke's available assets, the department was following the rules created by the Medicare Catastrophic Coverage Act of 1988 (catastrophic coverage act), Pub. L. No. 100-360, § 303 (c), 102 Stat. 683, 762, regarding the availability of spousal assets, and not the rules governing asset valuation that were in effect either at the time that the trust was created in 1968 or when the trust became irrevocable due to Palomba's death in 1976.

At the administrative hearing, the hearing officer rejected the plaintiff's argument. The hearing officer concluded that the plaintiff and Bourke met the definition of "[catastrophic coverage act] spouses" as defined in § 0500 of the Uniform Policy Manual,[9] and that, as a result, the calculation method for determining the assets available to a Medicaid applicant found in § 4025.67 (A) of the Uniform Policy Manual applied. Pursuant to § 4025.67 (A), the value of the nonexcluded assets[10] owned by a community spouse, after subtracting the protected amount, are "deemed"[11] available to the institutionalized spouse for purposes of the institutionalized spouse's eligibility determination. As a result, the hearing officer concluded that, because the plaintiff conceded that the trust principal was available to the plaintiff, the department was correct to include its value as an asset when determining Bourke's Medicaid eligibility. The plaintiff appealed this decision to the trial court on the same basis, and the trial court affirmed the hearing officer's decision, finding that the cases cited by the plaintiff in support of her position were all distinguishable, and relying, instead, "on the general rule that when one applies for Medicaid, the applicant is subject to whatever statutes are then in effect regarding assets in existence at the time of institutionalization or application." This appeal followed.[12]

The sole issue on appeal is whether the trial court properly affirmed the hearing officer's determination that the availability and eligibility rules of the catastrophic coverage act apply to the trust and thus, that it should be considered an asset of Bourke for purposes of his Medicaid eligibility.[13] The plaintiff claims that by applying the provisions of the catastrophic coverage act, a law which came into effect after the trust in the present case became irrevocable, the hearing officer and reviewing Superior Court have frustrated the intent of the trust's settlor and have also acted contrary to what the plaintiff contends is settled Connecticut law

regarding the applicability of the catastrophic coverage act to trusts that were in existence prior to the enactment of the law.

We begin with the appropriate standard of review. "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq. (UAPA)] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under UAPA. General Statutes § 4-183 (j) (5) and (6). Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the [plaintiff] to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . .

"Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 136–37, 778 A.2d 7 (2001).

Given the nature of the plaintiff's claim, namely, that the rules in effect prior to 1988 regarding the availability of assets and the eligibility of a Medicaid applicant for medical benefits should apply to the trust in the present case, "[o]ur analysis begins with an overview of the [M]edicaid program. The program, which was established in 1965 as Title XIX of the Social Security Act and is codified at 42 U.S.C. § 1396 et seq. ([M]edicaid act), is a joint federal-state venture providing financial

assistance to persons whose income and resources are inadequate to meet the costs of, among other things, medically necessary nursing facility care. . . . The federal government shares the costs of [M]edicaid with those states that elect to participate in the program, and, in return, the states are required to comply with requirements imposed by the [M]edicaid act and by the secretary of the Department of Health and Human Services. . . . Specifically, participating states are required to develop a plan, approved by the [S]ecretary of [H]ealth and [H]uman [S]ervices, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance to be provided. . . .

"Connecticut has elected to participate in the [M]edicaid program and has assigned to the department the task of administering the program. . . . Pursuant to General Statutes §§ 17b-262 and 17b-10, the department has developed Connecticut's state [M]edicaid plan and has promulgated regulations that govern its administration. See Uniform Policy Manual, supra.

"The [M]edicaid act requires that a state's [M]edicaid plan make medical assistance available to qualified individuals. 42 U.S.C. § 1396a (a) (10). The term medical assistance means payment of part or all of the cost of . . . care and services . . . [including] nursing facility services . . . . 42 U.S.C. § 1396d (a); see *Catanzano* v. *Wing*, 103 F.3d 223, 229 (2d Cir. 1996). Participating states are required to provide coverage to certain groups and are given the option to extend coverage to various other groups. The line between mandatory and optional coverage primarily is drawn in 42 U.S.C. § 1396a (a) (10) (A): mandatory coverage is specified in 42 U.S.C. § 1396a (a) (10) (A) (i); and optional coverage is set forth in subsection (a) (10) (A) (ii). In [M]edicaid parlance, individuals who qualify for [M]edicaid benefits pursuant to those subsections are referred to as the categorically needy because, in general, they are eligible for financial assistance under Titles IV-A (Aid to Families with Dependent Children) or XVI (Supplemental Security Income for the Aged, Blind, and Disabled) of the Social Security Act.

"Under the [M]edicaid act, states have an additional option of providing medical assistance to the medically needy—persons who . . . lack the ability to pay for their medical expenses but do not qualify as categorically needy solely because their income exceeds the income eligibility requirements of the applicable categorical assistance program. . . . The medically needy become eligible for [M]edicaid, if the state elects to cover them, by incurring medical expenses in an amount sufficient to reduce their incomes below the income eligibility level set by the state in its [M]edicaid plan. See 42 U.S.C. § 1396a (a) (17) (in determining eligibility, state must take costs . . . incurred for medical care into account); see also 42 C.F.R. § 435.301.

Only when they spend down the amount by which their income exceeds that level, are [medically needy persons] in roughly the same position as [categorically needy] persons . . . [because then] any further expenditures for medical expenses . . . would have to come from funds required for basic necessities. *Atkins* v. *Rivera*, [477 U.S. 154, 158, 106 S. Ct. 2456, 91 L. Ed. 2d 131 (1986)]. Connecticut has chosen to cover the medically needy. . . .

"The [M]edicaid act, furthermore, requires participating states to set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program. 42 U.S.C. § 1396a (a) (17) . . . . The resources standard set forth in Connecticut's state [M]edicaid plan for categorically needy and medically needy individuals is $1600. General Statutes §§ 17b-264 and 17b-80 (c); Uniform Policy Manual, supra, § 4005.10 . . . . Consequently, a person who has available resources; see 42 U.S.C. § 1396a (a) (17) (B); in excess of $1600 is not eligible to receive benefits under the Connecticut [M]edicaid program even though the person's medical expenses cause his or her income to fall below the income eligibility standard." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Ahern* v. *Thomas*, 248 Conn. 708, 713–16, 733 A.2d 756 (1999).

The enactment of the catastrophic coverage act was also "intended, in part, to ease the financial burden placed on a community spouse under the prior statutory regime that required the institutionalized spouse to spend down a large portion of the couple's resources, and thus impoverish the community spouse, before becoming eligible for [M]edicaid. . . . Under the catastrophic [coverage] act, a community spouse is entitled to receive a community spouse resource allowance . . . . The resource allowance is protected from the institutionalized applicant's health care obligations and does not count against the applicant's financial eligibility." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Burinskas* v. *Dept. of Social Services*, 240 Conn. 141, 148–49, 691 A.2d 586 (1997).

The plaintiff's specific contention on appeal is that, prior to the enactment of the catastrophic coverage act in 1988, the assets that were included in a given Medicaid applicant's eligibility determination were only "such income and resources as are, as determined in accordance with standards prescribed by the Secretary [of Health and Human Services], available to the applicant . . . ." 42 U.S.C. § 1396a (a) (17) (B). The plaintiff's position is that, under the rules governing eligibility and availability determinations in effect before the catastrophic coverage act was enacted, the trust would not have been considered by the department when determining Bourke's eligibility for Medicaid benefits,

because Bourke is not a beneficiary of the trust and, thus, it would not be considered "available" to him. Cf. *Wilczynski* v. *Harder*, 323 F. Supp. 509, 515 (D. Conn. 1971) (noting that, when determining eligibility, among other things, "[t]he state may not consider income or assets not actually available to the applicant, 42 U.S.C. § 1396a [a] [17] [B]"); *Rowland* v. *Maher*, 176 Conn. 57, 61–63, 404 A.2d 894 (1978) (noting that only assets actually available to applicant may be considered in determining eligibility, finding $2000 entry fee elderly patients paid to nursing home did not qualify as "available asset").

Pursuant to the provisions providing for the treatment of income included in the catastrophic coverage act, the department determines what assets and income are considered "available" to an institutionalized spouse in a very different way. Instead of focusing solely on the resources and assets that are available to the individual, the department is required to look at the income and assets available to *both* the institutionalized spouse and the community spouse. See 42 U.S.C. § 1396r-5 (c) (1) (B) and (2); see also Uniform Policy Manual, supra, § 4025.67.[14] Thus, when a married couple qualify as "[catastrophic coverage act] spouses," and either spouse subsequently applies for Medicaid benefits, whether that spouse is determined to be eligible for such benefits depends on whether the total amount of nonexcluded assets and resources available to either spouse, exceed the combined amount of the protected amount and the asset limit that applies to the institutionalized spouse. If the combined nonexcluded assets of the community spouse and the institutionalized spouse are found to exceed the permitted amount, the institutionalized spouse will not be eligible for Medicaid benefits. See Uniform Policy Manual, supra, § 4005.05 (D).

The plaintiff contends that Connecticut courts, including this court, have previously construed the catastrophic coverage act so as not to give it retroactive effect—in other words, the plaintiff's position is that Connecticut courts have determined that the eligibility and availability methods in effect on the date that a particular trust is established or becomes irrevocable should apply. In support of her position, the plaintiff relies primarily on the Superior Court case, *Hazelton* v. *Wilson-Coker*, Superior Court, judicial district of New Britain, Docket No. CV-02-051711-S (September 19, 2003) (*Bear, J.*) (35 Conn. L. Rptr. 505), a case that placed great weight on two previous decisions of this court, *Ahern* v. *Thomas*, supra, 248 Conn. 708, and *Skindzier* v. *Commissioner of Social Services*, 258 Conn. 642, 784 A.2d 323 (2001). The plaintiff claims that the decision in *Hazelton* correctly interpreted the aforementioned decisions of this court to hold that it is unlawful to apply the eligibility and availability provisions of the catastrophic coverage act to a trust established before it was signed into law. See *Hazelton* v.

*Wilson-Coker*, supra, 506-509.

The department, in response, claims that the cases cited by the plaintiff do not stand for any general rule that Connecticut law requires trusts to be treated according to the relevant Medicaid statutes in effect at the time that the trust was established or became irrevocable. Rather, the department claims, the decision of the Superior Court in *Hazelton* represents an incorrect, overly broad generalization of the holdings of *Skindzier* and *Ahern*, both of which: (1) dealt with different, more specialized provisions of the catastrophic coverage act; and (2) sought to determine whether to apply provisions contained in the catastrophic coverage act, or provisions included in a later law, the Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, § 13611 (e), 107 Stat. 312, 627.[15] Instead, the department asserts that this court should follow the approach of the hearing officer and the trial court in this matter, both of which found that: (1) *Hazelton*, *Skindzier*, and *Ahern* were distinguishable; and (2) those laws regarding eligibility and availability that were in effect when Bourke applied for Medicaid benefits govern the treatment of the plaintiff's interest in the trust. We agree with the department.

In this case, the relevant provision created by the catastrophic coverage act, 42 U.S.C. § 1396r-5; see Medicare Catastrophic Coverage Act of 1988, Pub. L. 100-360, § 303, 102 Stat. 683, 754–64; has an effective date with entirely different language than that found in § 13611 (e) of the Omnibus Budget Reconciliation Act of 1993. Instead of indicating that it applies to all assets established after a particular date, 42 U.S.C. § 1396r-5 (c) (1) (B) indicates that "[a]t the request of an institutionalized spouse . . . at the beginning of the first continuous period of institutionalization (beginning on or after September 30, 1989) of the institutionalized spouse and upon the receipt of relevant documentation of resources, the State shall promptly assess and document the total value [of the resources to the extent either the institutionalized spouse or the community spouse has an ownership interest] and shall provide a copy of such assessment and documentation to each spouse . . . ." In addition, 42 U.S.C. § 1396r-5 (c) (2) provides in relevant part: "In determining the resources of an institutionalized spouse at the time of application for benefits under this subchapter, regardless of any State laws relating to community property or the division of marital property—(A) except as provided in subparagraph (B),[16] all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse. . . ." (Footnote added.) Furthermore, 42 U.S.C. § 1396r-5 (a) (1) provides that "[i]n determining the eligibility for medical assistance of an institutionalized spouse . . . the provisions of this section supersede *any other provision of this subchapter (including*

*sections 1396a* [*a*] [*17*] and 1396a [f] of this title) which is inconsistent with them." (Emphasis added.) Thus, the plain language of 42 U.S.C. § 1396r-5 unambiguously indicates that this section—and its included methodology for determining what assets are deemed "available" to an applicant—are intended to apply to all applications for Medicaid benefits occurring after September 30, 1989, without reference to the date that a particular asset or resource came into existence. Thus, because Bourke applied for Medicaid benefits after September 30, 1989, the provisions contained in the catastrophic coverage act related to determining the extent to which the assets of a community spouse are considered "available" to an applicant, and whether such an applicant is eligible for Medicaid benefits applied to Bourke and the plaintiff.

This interpretation of the effective date of the provisions of 42 U.S.C. § 1396r-5 is bolstered by reference to the department's Uniform Policy Manual, which defines "[catastrophic coverage act] spouses" in its glossary of terms as "spouses who are members of a married couple one of whom becomes an institutionalized spouse on or after September 30, 1989, and the other spouse becomes a community spouse." Uniform Policy Manual, supra, § 0500. Another section of the Uniform Policy Manual provides that, in the case of "[catastrophic coverage act] spouses," the assets of the community spouse are deemed to be assets of the institutionalized spouse to the extent that they exceed the protected amount. See Id., § 4025.67 (A).

We do not find persuasive the plaintiff's argument that Connecticut case law has set a precedent for applying the Medicaid provisions governing the availability of assets and eligibility requirements in effect at the time that a given asset was established. Although, in her argument, the plaintiff emphasizes the importance of the reasoning of the Superior Court in *Hazelton*, we turn first to this court's earlier decisions in *Ahern* and *Skindzier*, as the court in *Hazelton* relied primarily on certain passages from those decisions as the basis for its reasoning. See *Hazelton* v. *Wilson-Coker*, supra, 35 Conn. L. Rptr. 506–508. In *Ahern*, this court was tasked with determining whether the trial court had improperly reversed the determination of the hearing officer and finding that the principal of a self-settled trust created by the plaintiff in that case prior to applying for Medicaid benefits was not includable in the plaintiff's available resources. See *Ahern* v. *Thomas*, supra, 248 Conn. 710–12. At issue was whether the self-settled trust fell within the definition of a "[M]edicaid qualifying trust," a circumstance which would have rendered the trust an asset "available" to the plaintiff, and would have, in turn, rendered the plaintiff ineligible for Medicaid benefits. (Internal quotation marks omitted.) Id., 712 and n.8. This court ultimately concluded that the trust did not qualify as an available resource to the

plaintiff; id., 743; but that is not the aspect of our decision in *Ahern* that is relevant to the present case. Instead, the portion of *Ahern* relevant to the present case is the portion of the opinion where this court decided a preliminary issue: whether the provisions related to Medicaid qualifying trusts enacted in either 1988 or 1993 applied. Id., 720–22; *Hazelton* v. *Wilson-Coker*, supra, 507–508. Specifically, in *Ahern*, this court noted that the case "[did] not involve the construction or application of the trust treatment provisions set forth at 42 U.S.C. § 1396p (d) of the [M]edicaid act. Those provisions were enacted in 1993 in an effort to further tighten the 'availability' loophole of 42 U.S.C. § 1396a (a) (17). . . . Although the transfer provisions set forth at [42 U.S.C.] § 1396p (d) of the [M]edicaid act supersede the [M]edicaid qualifying trust provisions set forth at 42 U.S.C. § 1396a (k) (1988), the transfer provisions apply only to trusts established after August 11, 1993, and do not apply to trusts, such as the one at issue . . . established prior to that date. See [Dept. of Health and Human Services, Health Care Financing Administration, State Medicaid Manual (January–May, 1988)] § 3259.2; see also Uniform Policy Manual, supra, § 4030.80 (C) and (D)." (Citations omitted.) *Ahern* v. *Thomas*, supra, 720–22.

In *Skindzier*, this court similarly decided an issue distinct from the one we are asked to decide in the present case. In that case, the issue was whether the plaintiff was eligible for Medicaid benefits in light of the fact that her deceased husband had created two testamentary trusts of which the plaintiff was a beneficiary. *Skindzier* v. *Commissioner of Social Services*, supra, 258 Conn. 643–44. These trusts were funded by property owned by the plaintiff's spouse at his death. Id., 644. The primary issue in *Skindzier* was whether the creation of these testamentary trusts by the plaintiff's husband constituted a "disqualifying transfer of assets" pursuant to 42 U.S.C. § 1396p (c) that would have rendered the plaintiff ineligible for Medicaid benefits for a period of time. Id., 652–53. This court, relying on the text of 42 U.S.C. § 1396p (d) (2) (A), found that testamentary trusts were specifically exempted from the provisions of § 1396p (c), and thus that the plaintiff was not rendered ineligible for Medicaid benefits. Id., 646–47, 654–56.

In *Hazelton*, at issue was whether the corpus of a testamentary trust created by the plaintiff's great uncle and naming her as a beneficiary should have been considered " 'available' " to the plaintiff's spouse for purposes of his Medicaid eligibility. See *Hazelton* v. *Wilson-Coker*, supra, 35 Conn. L. Rptr. 505. In that case, the trial court concluded that, because the trust at issue had been created in 1985, "[t]he [h]earing [o]fficer and the [d]epartment should have applied pre-1986 standards and rules of availability . . . ." (Internal quotation marks omitted.) Id., 507. The court explained that,

"[a]fter *Ahern*, [the department] knew or should have known that [it] was required to determine and apply federal law as it existed on the date of the creation of an irrevocable inter vivos trust. After *Skindzier*, [the department] knew or should have known that [it] was required to determine and apply federal law as it existed on the date of the creation of a testamentary trust, e.g., the testator's date of death." Id., 509.

We conclude that the conclusions drawn in *Hazelton* from this court's earlier decisions in *Ahern* and *Skindzier* are based on a misconception of the issues this court decided in those earlier cases. In neither *Ahern* nor *Skindzier* did this court make any determination as to whether the general rules regarding the treatment of income and resources of an institutionalized spouse should depend on when particular assets or resources were established. Rather, *Ahern* dealt specifically with the applicability of provisions related to self-settled trusts and specifically, whether the self-settled trust in that case met the definition of a "[M]edicaid qualifying trust," and was thus available to the settlor, who had applied for Medicaid benefits. (Internal quotation marks omitted.) *Ahern* v. *Thomas*, supra, 248 Conn. 712 and n.8, 720–28, 743. *Skindzier* dealt with the applicability of certain transfer of asset provisions that have no bearing on the present case. *Skindzier* v. *Commissioner of Social Services*, supra, 258 Conn. 644–47, 652–54, 661–62. In both cases, the court decided that particular statutory provisions either did or did not apply, not on the basis of any existing statewide policy or law, but because of the effective date provision of the 1993 Medicaid amendments, which stated quite specifically that the effective date of the relevant provisions was August 11, 1993. Id., 652–53; *Ahern* v. *Thomas*, supra, 720–22.

In summary, the determinations that this court made in *Skindzier* and *Ahern*, regarding the applicability of specific Medicaid provisions, were not based on a recognition that, when determining the availability of a given asset or the eligibility of a given Medicaid applicant, state law or policy requires assets to be treated in accordance with the relevant Medicaid provisions that were in effect at the time that the assets were created or established. Rather, this court's conclusions regarding the applicable law in those cases resulted from the effective date provisions of the relevant Medicaid provisions at issue. See Omnibus Reconciliation Act of 1993, Pub. L. 103-66, § 13611 (e), 107 Stat. 312, 627; *Skindzier* v. *Commissioner of Social Services*, supra, 258 Conn. 652–53, 658, citing *Ahern* v. *Thomas*, supra, 248 Conn. 721; *Ahern* v. *Thomas*, supra, 721, citing Uniform Policy Manual, supra, § 4030.80 (C) and (D); see also Uniform Policy Manual, supra, § 4030.80. To the extent that the decision in *Hazelton* is inconsistent with this opinion, *Hazelton* is overruled. Accordingly, we conclude that the trial court correctly concluded that the department did not act arbitrarily or abuse its

discretion in finding that the trust, which was available to the plaintiff, was deemed to be an asset of Bourke's pursuant to the relevant Medicaid provisions in effect at the time that Bourke applied for Medicaid benefits.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] The Commissioner of Social Services acts on behalf of the Department of Social Services and references in this opinion to the department include the commissioner.

[2] Either the applicant or, if he or she is married, the applicant's spouse, has the right to an administrative hearing if either spouse is dissatisfied with the department's assessment of spousal assets. See Dept. of Social Services, Uniform Policy Manual § 1570.05 (D) (4) (A).

[3] The plaintiff filed an administrative appeal with the trial court in accordance with General Statutes § 4-183 of the Uniform Administrative Procedure Act.

[4] The plaintiff appealed to the Appellate Court, and we transferred her appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] "Pursuant to General Statutes §§ 17b-262 and 17b-10, the department has developed Connecticut's state [M]edicaid plan and has promulgated regulations that govern its administration." (Footnote omitted; internal quotation marks omitted.) *Skindzier* v. *Commissioner of Social Services*, 258 Conn. 642, 649, 784 A.2d 323 (2001).

[6] The term "community spouse" is defined to mean "[a] community spouse is an individual who resides in the community, who does not receive home and community based services under a Medicaid waiver, who is married to an individual who resides in a medical facility or long term care facility or who receives home and community based services . . . under a Medicaid waiver." Uniform Policy Manual, supra, § 0500.

[7] The term "community spouse protected amount" is defined to mean "the amount of the total available non-excluded assets owned by both [catastrophic coverage act] spouses which is protected for the community spouse and is not counted in determining the institutionalized spouse's eligibility for Medicaid." Uniform Policy Manual, supra, § 0500. The term "[catastrophic coverage act] spouses" is defined to mean "spouses who are members of a married couple one of whom becomes an institutionalized spouse on or after September 30, 1989, and the other spouse becomes a community spouse." Id.

[8] This number is obtained by adding the value of assets a Medicaid applicant is entitled to hold, $1600, to the protected amount, $109,540.

[9] See footnote 7 of this opinion for the definition of "catastrophic coverage act spouses."

[10] The department's uniform policy manual provides in relevant part that "[t]here are certain assets which an assistance unit may own, but which the [d]epartment does not require the unit to convert to cash or otherwise use for support and maintenance. Such assets, called excluded assets, do not affect the unit's eligibility for assistance. . . ." Uniform Policy Manual, supra, § 4020.

[11] The department's uniform policy manual provides that "[d]eemed assets are assets which are owned by individuals who are not members of the assistance unit, but which are considered available to the unit." Uniform Policy Manual, supra, § 4025.05 (A) (1).

[12] The plaintiff has identified four issues on appeal: (1) "Did the [department] apply the correct eligibility and availability criteria when determining [Bourke's] eligibility . . . for Medicaid benefits?" (2) "Did the [department] err in including the corpus of the [trust] in the spousal assessment of assets when determining [Bourke's] eligibility . . . for Medicaid benefits?" (3) "Did the [department] err in determining that the provisions of the catastrophic coverage act apply when considering the availability of the [trust] to [Bourke]?"; and (4) "Did the [department] err in determining that the provisions of the [catastrophic coverage act] apply retroactively to trust assets created prior to the enactment of that legislation?" The plaintiff, however, does not make separate arguments for each of these identified issues, and each of them share the same foundational issue, namely, whether the provisions of the catastrophic coverage act apply to the trust, even though it was created and rendered irrevocable long before the catastrophic coverage act was signed into law. We thus construe the issue presented to

us: Did the trial court properly affirm the department's decision deeming the testamentary trust an asset available to Bourke pursuant to the catastrophic coverage act, where the plaintiff contends that Connecticut law requires that the trust asset be construed under the availability and eligibility criteria in effect at the time the trust was created?

[13] We note, preliminarily, that in most cases such as this one, when determining whether a trust is an includable asset to a Medicaid applicant, an additional issue must normally be decided: whether the trust is actually considered to be available to the relevant beneficiary or beneficiaries of the trust in question. Under Connecticut law, "only assets *actually available to a medical assistance recipient* may be considered . . . . Assets held in trust are considered available if the beneficiary has the legal right to compel distributions." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 692, 859 A.2d 533 (2004), quoting *Zeoli* v. *Commissioner of Social Services*, 179 Conn. 83, 94, 425 A.2d 553 (1979), citing General Statutes (Rev. to 2003) § 17b-261 (c). In the present case, the plaintiff has conceded that the trust is available to her. Therefore, we focus only on the question of whether the trust, which is an asset available to the plaintiff, is also deemed available to Bourke for purposes of the department's determination on Bourke's eligibility for Medicaid benefits.

[14] Title 42 of the United States Code, § 1396r-5 (c), provides in relevant part: "(1) . . . (B) At the request of an institutionalized spouse or community spouse, at the beginning of the first continuous period of institutionalization (beginning on or after September 30, 1989) of the institutionalized spouse and upon the receipt of relevant documentation of resources, the state shall promptly assess and document the total value [of the resources to the extent either the institutionalized spouse or the community spouse has an ownership interest] and shall provide a copy of such assessment and documentation to each spouse and shall retain a copy of the assessment for use under this section. If the request is not part of an application for medical assistance under this subchapter, the State may, at its option as a condition of providing the assessment, require payment of a fee not exceeding the reasonable expenses of providing and documenting the assessment. At the time of providing the copy of the assessment, the State shall include a notice indicating that the spouse will have a right to a fair hearing under subsection (e) (2) of this section.

(2) . . . In determining the resources of an institutionalized spouse at the time of application for benefits under this subchapter, regardless of any State laws relating to community property or the division of marital property—

(A) except as provided in subparagraph (B), all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse, and

(B) resources shall be considered to be available to an institutionalized spouse, but only to the extent that the amount of such resources exceeds the amount computed under subsection (f) (2) (A) of this section (as of the time of application for benefits)." Section 4025.67 of the department's uniform policy manual is Connecticut's implementation of this federal statute.

[15] Section 13611 (e) (2) of the Omnibus Budget Reconciliation Act of 1993 provides in relevant part: "The amendments made by this section shall not apply . . . (B) with respect to assets disposed of on or before the date of the enactment of this [a]ct, or (C) with respect to trusts established on or before the date of the enactment of this [a]ct."

[16] Subparagraph (B) of 42 U.S.C. § 1396r-5 (c) (2) provides: "[R]esources shall be considered to be available to an institutionalized spouse, but only to the extent that the amount of such resources exceeds the amount computed under subsection (f) (2) (A) of this section (as of the time of application for benefits)."